963 So.2d 521 (2007)
STATE of Louisiana, Appellee
v.
Brandon Lynn KENNEDY, Appellant.
No. 42,258-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*522 Peggy J. Sullivan, Monroe, for Appellant.
Paul J. Carmouche, District Attorney, John F. McWilliams, Jr., Dhu Thompson, Assistant District Attorneys, for Appellee.
*523 Before WILLIAMS, GASKINS and MOORE, JJ.
WILLIAMS, J.
The defendant, Brandon Lynn Kennedy, was charged by bill of information with possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. Following a trial, a jury convicted the defendant of the responsive verdict of attempted possession of a firearm by a convicted felon. He was sentenced to serve seven years in prison at hard labor without benefit of probation, parole or suspension of sentence. We affirm the defendant's conviction and sentence.

FACTS
On September 3, 2004, at approximately 2:10 a.m., Corporal Dan Sawyer, of the Shreveport Police Department, was on routine patrol when he pulled a vehicle over for having a broken taillight. As Cpl. Sawyer approached the vehicle, he observed two occupants in the vehicle. The driver, Travell Sanders, indicated that the vehicle belonged to the defendant, the passenger in the vehicle. Cpl. Sawyer observed an alcoholic beverage in the glove compartment when the defendant opened it to retrieve paperwork. Cpl. Sawyer asked the men to step out of the vehicle and asked if there were any weapons in the vehicle. Once the men exited the vehicle, Cpl. Sawyer patted them down to check for weapons. No weapons were found on their persons.
Cpl. Sawyer testified that Sanders' demeanor "seemed normal," while the defendant was "a little bit belligerent and a little bit nervous." Cpl. Sawyer also testified that when he informed the men that he was going to conduct a search of the vehicle, the defendant "became very defensive" and was adamant in his refusal to allow the officer to search the vehicle. Cpl. Sawyer looked into the vehicle and observed a Tec 9 automatic weapon sticking out from beneath the front passenger seat where the defendant had been sitting. The weapon was fully loaded, and a bullet was in the chamber.
Cpl. Sawyer testified that he asked the defendant why he did not inform him that a gun was in the vehicle, and the defendant replied that he was not supposed to have a gun because he was a convicted felon. Cpl. Sawyer then placed the defendant under arrest and advised him of his Miranda rights. Cpl. Sawyer stated that the defendant indicated that he understood his rights, and he did not force or coerce the defendant to make a statement after giving him his rights.
After being advised of his rights, the defendant informed Cpl. Sawyer that he had been convicted of robbery. He also informed the officer that the gun did not belong to him and his uncle used the car at times. The defendant indicated that his uncle, who was out of town, might have left the gun in the vehicle.
Cpl. Sawyer testified that the defendant did not appear to be intoxicated to the point that he was unable to understand his rights. On cross-examination, Cpl. Sawyer admitted that the defendant had informed him that he was not driving because he had been drinking. He also admitted that he never saw the defendant handle the gun and that he did not know whether the defendant's fingerprints were on the gun. He further testified that he had not interviewed anyone with regard to the ownership of the gun.
On redirect examination, Cpl. Sawyer stated that as soon as he looked in the vehicle, he saw the gun sticking out from under the seat. The following colloquy then occurred:

*524 Q. So it's fair to say from your vantage point if you were opening the door, you were getting in that vehicle, you would be able to see a gun of this size inside the car even if it was the uncle's gun?
A. Yes, Sir.
Q. Was this gun  since you testified that it was almost immediately observable, did you have to reach all the way under the seat to get it as if someone had thrown it in the back to hide it?
A. No, Sir, it was right at the edge of the seat.
The defendant testified in his own defense. He testified that on the day of the incident, Sanders was driving the vehicle because he (the defendant) had been drinking. When asked whether he was intoxicated or "just drinking a little" he responded: "Had been drinking a little. Not physically impaired where, you know, I don't understand what's going on." According to the defendant, after he exited the car, Cpl. Sawyer asked him if there were weapons in the car and he responded in the negative because he felt sure there were no weapons in the car. He stated that the first time he had any knowledge that the gun was in the vehicle was when Cpl. Sawyer pulled it out and showed it to him. The defendant denied telling Cpl. Sawyer that his uncle used the car. Instead, the defendant testified that the car belonged to his cousin and the cousin was the only other person who had been in the car. He stated that he knew the cousin owned a gun and that the cousin was the only other person that could have had a gun in the car.
The defendant admitted telling Cpl. Sawyer that he had been convicted of a crime, and he stated that if he had known there was a gun in the car, he would not have been in the car because he knew he could not be around guns. He also testified that as he was being taken into custody, he was "telling them we need to get in touch with him [the cousin], so we can verify it was his gun and I did not know it was in there." The defendant stated that he gave the officers his cousin's name and contact information.
On cross-examination, the defendant indicated that Cpl. Sawyer was lying about him refusing to allow him to search the car. He stated that Sanders had consented to the search. According to the defendant, once Cpl. Sawyer found the bottle of alcohol and the defendant admitted that the alcohol belonged to him, Cpl. Sawyer "didn't want to hear nothing else I had to say." The defendant indicated that Cpl. Sawyer asked both Sanders and him for permission to search the car. Sanders replied, "Go ahead," but he did not. Instead, he asked, "What's the problem? What's the call for all of this?" The defendant admitted that he did not give Cpl. Sawyer "full access," but he denied telling Cpl. Sawyer that he could not search the vehicle. The defendant also denied that the gun could be seen when entering the vehicle, and he stated that he did not see the gun.
The defendant testified that he informed the officers who transported him to jail that the gun belonged to his cousin, Delandra Webb, and he told them that they should call his uncle in order to get in touch with the cousin because the gun belonged to the cousin. According to the defendant, he did not tell Cpl. Sawyer his cousin's name because the officer did not want to hear anything that he had to say. The defendant indicated that he had told his lawyer early on in the proceedings about Webb, but stated that he did not tell the police about the cousin because he assumed that his lawyer "would take care of it."
*525 Delandra Webb also testified. When shown the weapon found in the vehicle, Webb testified that the gun belonged to him. He also testified that he put the gun in the car, but he did not tell the defendant the gun was in the car. When asked why he left the gun in the car when he was not using it, he responded that a lot of children were staying in the house where he lived and he did not want to leave the gun in the house with them. Furthermore, Webb testified that he was difficult to contact because he had been moving from place to place during the six months prior to the trial, and sometimes he did not have a phone. According to Webb, he did not receive the first two subpoenas, but his father told him about the second subpoena; Webb testified that he did not receive a third subpoena for the trial.
On cross-examination, Webb admitted that he and the defendant were close, and he would not like to see him get into trouble. Webb testified that he had bought the gun from a friend for $200. However, it was clear that Webb did not know how to load or unload the weapon, but only how to cock it. Webb admitted that he had never put a bullet into the chamber and indicated the bullet could have been put into the chamber by the person from whom he had bought the gun.
Webb admitted that he knew the defendant was a convicted felon and was not supposed to be around guns. He indicated that on the night in question, he gave Sanders the keys to his car to drive the defendant where he needed to go. According to Webb, he did not realize that the gun was in the car with the defendant until "like 30 to 40 minutes after he was gone." He also admitted that he was "thinking irresponsibly" by putting the gun under the passenger seat rather than in the trunk. Webb indicated that he put the gun under the passenger seat because there was "an electronic box" under the driver's seat. He testified that the gun was located under the seat where "you can reach and grab it," but he also indicated that "you're not just going to automatically put your hand down there and get the gun."
The state repeatedly questioned Webb about why he did not contact the police, but allowed his cousin to remain in jail. Webb stated:
Well, Sir, actually I didn't know I could call the police and do that. I don't know too much about the law. I didn't know I could call the police and have that ceased. I did not know that.
He also stated that he did not contact the police because he had not registered the gun. Furthermore, Webb admitted that he had never talked to defense counsel about the case, other than to give his name and address and talk about being subpoenaed for court.
Tommy Rachal, a corporal with the Shreveport Police Department Crime Scene Investigation Identification Unit, also testified at the trial. Cpl. Rachal qualified at trial as a fingerprint identification expert. His testimony simply established that the defendant's fingerprints on the bill of information from a prior offense matched the fingerprints taken from the defendant by Rachal in open court that day. He also testified that he was familiar with how fingerprints are taken from guns. When asked how difficult it was to extract fingerprints from a handgun like the one found in the vehicle, he responded:
A lot of guns, areas that are mostly touched on firearms as far as trigger area of a hammer are small areas where it won't leave enough ridge detail to get a print match. A lot of guns are plastic or most guns are textured or Parkerized to prevent rust.
*526 When asked how often he had been able to extract fingerprints from firearms "such as that," Cpl. Rachal responded that he had done it twice out of hundreds of instances.
At the conclusion of the trial, the jury found the defendant guilty of the responsive verdict of attempted possession of a firearm by a convicted felon. The trial court sentenced him to serve seven years in prison at hard labor without benefit of probation, parole or suspension of sentence. The trial court denied the defendant's motion to reconsider sentence, and this appeal followed.

DISCUSSION
Sufficiency of the Evidence
The defendant contends the evidence adduced at trial was insufficient to support his conviction of attempted possession of a firearm by a convicted felon. He also argues that the trial court erred in ruling that he had constructive possession of a firearm, even though he denied knowledge of the presence of the gun in the vehicle.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
LSA-R.S. 14:95.1(A) provides, in pertinent part:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) . . . to possess a firearm or carry a concealed weapon.
In this case, simple robbery, the defendant's prior felony, is specifically listed in LSA-R.S. 14:2(B)(23) as a crime of violence.
A jury has the prerogative to compromise and render a lesser verdict *527 whenever it could have convicted as charged. State v. Mitchell, 35,970 (La. App. 2d Cir.5/08/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App. 2d Cir.3/1/00), 754 So.2d 387. Even if an offense is legislatively designated as responsive by LSA-C.Cr.P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. LSA-C.Cr.P. art. 814(C). State v. Mitchell, supra; State v. Johnson, 30,078 (La.App. 2d Cir.12/10/97), 704 So.2d 1269, writ denied, 98-0382 (La.6/26/98), 719 So.2d 1054. Absent a contemporaneous objection, however, a defendant cannot complain if the jury returns a legislatively-approved responsive verdict, even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990); State v. Mitchell, supra.
Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control, even if only temporary; moreover, constructive possession contains an element of awareness or knowledge that the firearm is there and general intent to possess. State v. Ball, 31,515 (La.App. 2d Cir.12/9/98), 733 So.2d 1, aff'd, 99-0428 (La.11/30/99), 756 So.2d 275. However, because the defendant was convicted of attempted possession in this case, the state had the burden of proving that the defendant specifically intended to possess the weapon.
Specific intent to commit a crime is an element of an attempted offense. LSA-R.S. 14:27. Hence, a conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the prescribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. LSA-R.S. 14:10, 14:27. See State v. Parish, 405 So.2d 1080 (La.1981), on remand, 429 So.2d 442 (La.1983); State v. Cheatham, 38,413 (La.App. 2d Cir.6/23/04), 877 So.2d 164, writ denied, 2004-2224 (La.6/24/05), 904 So.2d 717.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La. 1983); State v. Wilhite, 40,539 (La.App. 2d Cir.12/30/05), 917 So.2d 1252. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Davies, 35,783 (La.App. 2d Cir.4/05/02), 813 So.2d 1262, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 389, citing LSA-R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Ellis, 28,282 (La.App. 2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.02/21/97), 688 So.2d 521.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). In reviewing the correctness of such a determination, the Court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra.
*528 In State v. Storks, 2002-754 (La.App. 5th Cir.12/30/02), 836 So.2d 638, police officers conducted an investigatory stop of a vehicle in which the defendant was a passenger. After the driver of the vehicle was ordered to exit the vehicle, the officers discovered that a firearm was in the vehicle. Consequently, the three passengers were ordered to exit the vehicle one at a time. Once the vehicle was empty, the officers observed a loaded handgun in the middle of the seat where the defendant and another passenger had been sitting. The officers determined that the defendant was a convicted felon and placed him under arrest. The defendant was convicted of attempted possession of a firearm, a responsive verdict under LSA-R.S. 14:95.1. The appellate court affirmed the conviction, finding that the jury had sufficient evidence to conclude that the defendant was aware that the gun was in the vehicle and that the gun was under his dominion and control at the time the vehicle was stopped.
In the instant case, the evidence is sufficient to support the defendant's conviction for attempted possession of a fireman by a convicted felon. The testimony showed that Cpl. Sawyer found the defendant to be very nervous after the routine traffic stop for a broken taillight, and the defendant denied Cpl. Sawyer permission to search the vehicle. Furthermore, when Cpl. Sawyer began to search the vehicle, he was able to see the gun almost immediately as he leaned into the doorway of the car. Furthermore, given the size of the weapon and the defendant's position as the passenger in the vehicle, the evidence is sufficient to show that he had easy access to the weapon and could exercise dominion over it. Under these circumstances, the evidence was sufficient to find both specific and general intent.
Moreover, it is clear that neither the judge nor the jury believed Webb's testimony. In State v. Paul, 2005-612 (La. App. 5th Cir.12/14/06), 924 So.2d 345, during a search of the defendant's bedroom, a gun was found on the side of the defendant's bed. The defendant's father denied ownership of the gun at the time and denied awareness that the gun was in the defendant's bedroom. However, during the trial, the father testified that his friend had loaned the gun to him (the father). He stated that he had been sleeping in the defendant's bedroom with the gun in case the perpetrator who had burglarized his home returned. The father asserted that he did not claim the gun earlier because he was on probation at his job and he was afraid he would lose his job if he got into trouble; the father admitted that he never told the officer that the gun belonged to him, but the father stated that he had told this information to the defendant's lawyer. The appellate court affirmed the defendant's conviction for possession of a firearm by a convicted felon.
As in State v. Paul, supra, the trier of fact in the instant case simply did not believe the testimony of the defendant's relative concerning ownership of the weapon found. In Paul, the father did not claim ownership of the gun until the trial. In the instant case, Webb did not come forward to claim ownership of the weapon initially, but only on the day of trial. Finally, the state offered testimony to explain why the defendant's fingerprints were not found on the weapon. Thus, viewing the evidence in the light most favorable to the prosecution, we conclude that the defendant's conviction was supported by sufficient evidence. This assignment is without merit.
Admissibility of Defendant's Statement to Cpl. Sawyer
The defendant also argues that the trial court erred in determining that his statement *529 to Cpl. Sawyer prior to being advised of his Miranda rights was free and voluntary. According to the defendant, although Cpl. Sawyer did not believe that the defendant was too intoxicated to be questioned prior to being given his Miranda warnings, he was arrested on a violation of the open container law and had been drinking enough to ask his friend to drive the vehicle.
Intoxication may render a confession involuntary if it negates a defendant's comprehension and renders him unconscious of the consequences of what he is saying. Whether intoxication exists and to a degree sufficient to vitiate voluntariness are questions of fact. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Bowers, 39,970 (La.App. 2d Cir.8/19/05), 909 So.2d 1038. However, the mere fact of drug or alcohol intoxication is insufficient, standing alone, to render a confession involuntary. See State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994) (where the confession was voluntary although defendant had smoked three or four cocaine rocks the night before his 11:00 p.m. statement, as well as consumed several beers the day he confessed); State v. Bowers, supra.
In the instant case, the defendant did not file a motion to suppress his statements to Cpl. Sawyer, and he did not introduce any evidence at the free and voluntary hearing.[1] Moreover, the defendant has not presented any evidence to indicate that his statements to Cpl. Sawyer were not free and voluntary. During his testimony at trial, the defendant was asked if he was intoxicated or had "just been drinking a little." The defendant replied that he "had been drinking a little. Not physically impaired where, you know, I don't understand what's going on."
Furthermore, the statements, which the defendant made before he was advised of his Miranda rights, rather than being confessions of guilt, made little difference in this case. Cpl. Sawyer testified that the defendant told him that he was the owner of the car and he was a convicted felon. He also stated that the defendant refused to allow him to search the car. However, Cpl. Sawyer had observed the open alcoholic beverage container in the glove compartment before the search of the vehicle. After the occupants exited the vehicle, Cpl. Sawyer informed them that he was going to conduct a search. The search, in turn, revealed the weapon under the passenger's seat. Thus, even if the defendant had not made any statements, Cpl. Sawyer would have found the gun, which was protruding from under the seat.
Sentence
The defendant argues that in imposing the sentence, the trial court failed to comply with LSA-C.Cr.P. art. 894.1. The defendant specifically contends the trial court failed to order a presentence investigation and only reviewed the record in the instant case, the defendant's juvenile records and city court records. Although the trial court stated that it had "considered all the considerations under Article 894.1," none of the factors were discussed.
*530 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
In this case, at the sentencing hearing, the trial court noted that the defendant was 20 years old at the time of the offense, and he was 18 years old at the time of his previous conviction. The court also noted that the maximum penalty for attempted possession of a firearm by a convicted felon was 7½ years at hard labor without benefits, and a fine not to exceed $2,500. The trial court reviewed the facts of the case, including Webb's testimony and noted that the first time Webb "ever surfaced" was on the day of the trial, even though the case had been pending approximately 17 months. The court opined that everyone in the courtroom believed that Webb had lied. The trial court also noted that the gun itself was a "huge item" when loaded, and the court did not believe that there was any way "from a common sense standpoint" that a passenger could not have known that the weapon was present.
With regard to the defendant's prior offense of simple robbery, the court reviewed the fact that when two individuals went to purchase controlled dangerous substances, the defendant had jumped into their vehicle and demanded the car stereo. He also took a woman's purse during the course of the robbery.
The trial court also had reviewed the defendant's juvenile court record, noting that he was adjudicated a delinquent at age 13; there were additional entries at age 15 (being ungovernable) and at age 16 (possession of controlled dangerous substance). At age 17, there was an entry concerning loud music to which he pled guilty in city court, and a subsequent plea to false insurance records, also in city *531 court. The next year there was another plea to loud music in city court, as well as a guilty plea in city court to simple assault while the instant matter was pending. The defendant was 21 years old at that point.
The trial court further reviewed docket numbers in Caddo District Court, where the records indicated that in 2001, the defendant failed to pay a fine relating to possession of a controlled dangerous substance (marijuana) and a bench warrant was issued for his arrest. Records further showed a petition for revocation in May 2002, as well as a separate matter concerning possession of Schedule II controlled dangerous substances that was dismissed in May 2004. Another matter was dismissed in August 2005 concerning possession of a Schedule I drug.
After reviewing the defendant's criminal history, the trial court concluded that there was a pattern of events that began when the defendant was 13 years old; the court found this had a lot to say about "character and propensities." The court also found that the jury gave the defendant "a substantial break" by returning a responsive verdict, and the court believed that the defendant had committed perjury on the witness stand. After stating that it had considered all the factors under LSA-C.Cr.P. art. 894.1, the trial court expressed its belief that a lesser sentence would deprecate the seriousness of the offense. The trial court concluded that the defendant should be committed to a custodial environment, and that a more lenient sentence would result in further crime, the court imposed 7 years at hard labor without benefits.
After reviewing the record, we conclude that the trial court gave sufficient consideration to the factors set forth in LSA-C.Cr.P. art. 894.1. This sentence is neither shocking nor grossly disproportionate to the seriousness of the offense, given this offender's criminal history. This assignment is without merit.
We also note that the trial court failed to impose the mandatory fine in this case. As a result, the sentence constitutes an illegal sentence. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. LSA-C.Cr.P. art. 882(A). However, this court is not required to take such action. See, State v. Haynes, XXXX-XXXX (La.12/10/04), 889 So.2d 224; State v. Griffin, 41,946 (La.App. 2d Cir.5/2/07), 956 So.2d 199; State v. Sims, 40,300 (La.App. 2d Cir.10/26/05), 914 So.2d 594. The state in this case has not noted the error, and the defendant has not been prejudiced in any way.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App. 2d Cir.4/7/99), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288. It is the state's burden to prove the admissibility of any evidence seized without a warrant. LSA-C.Cr.P. art. 703(D); State v. Traylor, 31,378 (La.App. 2d Cir.12/9/98), 723 So.2d 497.