Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,951-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

GERALD MANCHIP WHITE                        Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 241,855

Honorable Charles A. Smith, Judge

* * * * *

IKERD LAW FIRM, LLC                         Counsel for Appellant
By: Chad M. Ikerd

J. SCHUYLER MARVIN                          Counsel for Appellee
District Attorney

RICHARD R. RAY
DALE N. MONTGOMERY, II
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and THOMPSON, JJ.

**COX, J.**

This criminal appeal arises out of the 26th Judicial District Court, Bossier Parish, Louisiana. Gerald Manchip White was charged with three counts of possession of a firearm or carrying a concealed weapon by a convicted felon, in violation of La. R.S. 14:95.1. He was unanimously convicted for attempted possession of a firearm or carrying a concealed weapon by a convicted felon (responsive verdict for count one) and possession of a firearm or carrying a concealed weapon by a convicted felon (count three). The jury found him not guilty on count two. Mr. White now appeals his convictions. For the following reasons, we affirm his convictions, affirm in part and vacate in part his sentences, and remand with instructions.

## FACTS

On October 29, 2021, Mr. White was arrested for being a felon in possession of the following three guns, all found in his home: EIG model EI .22 revolver (found in his wife's dresser drawer); Smith & Wesson 9 mm handgun (found in his daughter's bedroom); and Taurus 9 mm handgun (found in the living room couch). At the time the guns were found, Mr. White was newly on probation from a February 11, 2020, conviction for possession of Schedule II CDS. The following testimony was presented at a jury trial on August 23, 2023:

Ayleen Cook testified that she is a probation and parole officer, and although she was not Mr. White's supervisor, she previously supervised Mr. White. The bill of information and minutes from Mr. White's previous conviction for possession of Schedule II CDS were admitted into evidence. Officer Cook testified that she spoke with Mr. White at his residence on October 27, 2021, while looking for another parolee. She stated that Mr.

White informed her that his home was broken into, and his son was shot with the son's gun during the altercation. Officer Cook testified that she asked Mr. White if the gun was still in the home. He stated that it was in the home, and she advised him that the gun could not be in the home. Mr. White stated that he understood.

Officer Cook testified that she returned to Mr. White's residence on October 29, 2021, to look for the other parolee, who was found sleeping in a vehicle in the driveway. Officer Cook testified that based on the previous conversation with Mr. White about a gun in the home, she called for more officers to do a residence check of the home for officer safety. She stated that Mr. White, his wife, his son, and an unknown male and female were in the home at the time of the search. She stated that officers woke up everyone in the house, brought them into the living room, and searched the home. Officer Cook testified that she searched the master bedroom and found an EIG EI .22 revolver in the top drawer of the dresser. Pictures of the gun in the drawer were introduced into evidence.

Officer Cook testified that she found a second gun, a Taurus 9 mm, in the living room couch. She stated that she searched a second bedroom, where she found a third gun, a Smith & Wesson 9 mm with a drum magazine, under the bed. Officer Cook stated that Mr. White was on parole at the time the guns were found, the ten-year cleansing period had not passed, and Mr. White was arrested for possession of the firearms.

Jordan White testified that he is Mr. White's son and lived in the house with his parents, sister, nephew, and grandmother.[1] Jordan stated that he was

---

[1] Jordan's grandmother was not in the home at the time of the search.

asleep on the couch when officers arrived that morning to search the house. He stated that officers took him outside when he opened the door to let them inside. Jordan testified that he knew there was a gun in the couch because he slept on the couch, and it was his gun. He stated that he bought the gun for safety after the break-in and his gun was taken. Jordan stated that he did not tell anyone in the house that he had a gun hidden in the couch. He testified that when the gun was found in the couch, he told officers it was his gun.

Erin West testified that she is Mr. White's daughter and lived in the home at the time of the search. She stated that the gun found under her bed in the back bedroom belonged to her boyfriend, who was with her the morning of the search. She testified that he brought the gun with him, and it was only in the home for the night. Ms. West stated that her family did not know that her boyfriend brought a gun with him that night.

On cross-examination, Ms. West testified that she was not aware of any other guns in the home. She stated that she did not see her father or brother in the living room when officers brought her out of her bedroom and did not know, at the time, why her father was arrested.

Kimberly White testified that she is married to Mr. White and lives in the home with him and their two children. She stated that she owns a "25 revolver" that belonged to her father. She testified that she was still in the bedroom when officers searched and found the gun. Mrs. White stated that the revolver was found in her drawer. After reviewing a picture of the gun in the drawer, Mrs. White identified her clothes in the drawer with the gun. She testified that no one else knew she had the gun.

As to count one (the .22 revolver in the master bedroom), the jury found Mr. White guilty of the responsive verdict of attempted possession of a

3

firearm or carrying a concealed weapon by a convicted felon. As to count two (the Smith & Wesson 9 mm found in the back bedroom), the jury found Mr. White not guilty. As to count three (the Taurus 9 mm found in the couch), the jury found Mr. White guilty. The jury was polled regarding counts one and three. The trial court confirmed that the verdicts were unanimous. Mr. White filed a pro se motion for a new trial, which was denied.

The trial court sentenced Mr. White to seven years at hard labor and $500 for count one and 14 years at hard labor and $1,000 for count three. The sentences were ordered to run concurrently. Mr. White filed a motion to reconsider his sentences, and it was denied by the trial court. Mr. White now appeals his convictions.

**DISCUSSION**

Mr. White argues that the State failed to prove that he was guilty of both counts related to possession of a firearm by a convicted felon. He asserts that the State did not prove that he had constructive possession, or attempted possession, of either gun or that he had the requisite intent to possess a firearm. Mr. White argues that "mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession." *State v. Johnson*, 03-1228 (La. 4/14/04), 870 So. 2d 995. He asserts that his convictions for counts one and three should be reversed.

The State argues that the jury's guilty responsive verdict and guilty verdict were supported by the evidence and should not be reversed as the evidence presented at trial was more than sufficient to support the finding of

4

guilt against Mr. White on both charges. The State asserts that based on the testimonies of Officer Cook, Jordan, and Mrs. White, Mr. White had knowledge of firearms in his home; therefore, he had the requisite intent to possess a firearm, and the elements of the offense were met. The State requests the jury's verdicts be affirmed.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now codified in La. C. Cr. P. art. 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The *Jackson* standard is applicable to cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La.

5

App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *Broome, supra*.

*Possession of a Firearm*

To support a conviction for possession of a firearm by a convicted felon, the State must prove the following elements beyond a reasonable doubt: (1) the defendant was in possession of the firearm; (2) he was previously convicted of an enumerated felony; (3) the 10-year statutory period has not passed; and, (4) he had general intent to commit the offense. La. R.S. 14:95.1; *State v. Husband*, 437 So. 2d 269 (La. 1983); *State v. Hill*, 53,286 (La. App. 2 Cir. 3/4/20), 293 So. 3d 104. The general intent to commit the offense of possession of a firearm by a convicted felon may be proved through the actual possession of the firearm or through the constructive possession of the firearm. *State v. Law*, 45,435 (La. App. 2 Cir. 8/11/10), 46 So. 3d 764. For purposes of the offense of possession of a firearm by a convicted felon, whether the proof is sufficient to establish possession turns on the facts of each case. *Id*.

Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession. *State v. Johnson, supra*; *State v. Hill, supra*; *State v. Stephens*, 49,680 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1168.

6

Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. *State v. Kennedy*, 42,258 (La. App. 2 Cir. 8/15/07), 963 So. 2d 521. Such guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. *State v. Johnson, supra.*

In this case, possession of Schedule II CDS, Mr. White's prior felony, is listed as a prohibited offense in La. R.S. 14:95.1. Mr. White was convicted of possessing the 9 mm Taurus that was found in the living room couch. The jury heard testimony from the searching officer and Mr. White's family. Jordan testified at trial that the Taurus was his gun, and he brought it inside when he slept. Jordan slept on the living room couch because he did not have his own bedroom. He stated that no one else knew that the gun was in the house. Officer Cook testified that she did not recall anyone claiming the weapons as their own when Mr. White was arrested. Additionally, Mr. White told Officer Cook when she initially came to the home searching for a parolee two days prior that there was a gun still in the home. Officer Cook testified that she told Mr. White he could not have guns in the home. Officer Cook, to her credit, did not arrest Mr. White at that time and allowed him the opportunity to remove all firearms from the home.

The jury was in the best position to weigh the testimony and determine if Mr. White had constructive possession of the gun. We do not find the jury to be manifestly erroneous in its decision. The gun was found in the living room couch. Prior to the search, Mr. White admitted to a gun being in the home. In this case, Mr. White's knowledge of a weapon, plus a weapon found in a common area of the home, was enough to show he had constructive possession. We affirm this conviction.

7

*Attempted Possession of a Firearm*

Specific intent to commit a crime is an element of an attempted offense. La. R.S. 14:27. Specific criminal intent is the state of mind that exists when the offender actively desired the prescribed criminal consequences to follow his act or failure to act. *State v. Williams*, 47,245 (La. App. 2 Cir. 8/22/12), 103 So. 3d 558. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); *State v. Draughn*, 05-1825 (La. 1/17/07), 950 So. 2d 583, *cert. denied*, 552 U.S. 1012, 128 S. Ct. 537, 169 L. Ed. 2d 377 (2007). The determination of whether the requisite intent is present is a question for the trier of fact. *State v. Huizar*, 414 So. 2d 741 (La. 1982), *State v. Williams, supra.*

An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt. La. R.S. 14:27(C).

A conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the prescribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. La. R.S. 14:27; *State v. Kennedy, supra.*

Attempted possession of a firearm by a convicted felon is a responsive verdict to a charge of possession of a firearm by a convicted felon under La. R.S. 14:95.1. *State v. Holloway*, 54,523 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1090, *writ denied*, 22-01090 (La. 9/20/22), 346 So. 3d 802. Because Mr. White was convicted of attempted possession in this case, the State had the

8

burden of proving that he specifically intended to possess the weapon. *See State v. Kennedy, supra.*

As stated above, a person may be convicted of attempt even though it appears the crime was actually perpetrated in the attempt. Here, the jury found that Mr. White attempted to possess the .22 in his bedroom. Mr. White shared the room with his wife and she testified that the gun belonged to her. The gun was found in Mrs. White's drawer. The pictures show that Mr. White did not have belongings in the drawer with the gun, but he had access to the drawer as it was located at the entrance of his bedroom. Based on the jury's finding that Mr. White possessed the Taurus 9 mm in the living room couch, the jury could also have found that he possessed the .22 in the drawer in his bedroom. We find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support a conviction of either the charged offense, possession of a firearm by a convicted felon, or the responsive verdict, attempted possession of a firearm by a convicted felon. A trier of fact has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. *State v. Davillier*, 46,625 (La. App. 2 Cir. 11/2/11), 83 So. 3d 22. We affirm this conviction.

*Errors Patent*

Our review of the record for errors patent reveals two errors. First, there is an error patent regarding the trial court's imposition of the fines. La. C. Cr. P. art. 875.1 became effective August 1, 2022, and although Mr. White committed his offenses before Article 875.1 took effect, it is a procedural statute that applies to all actions subsequent to its effective date. Therefore, according to La. C. Cr. P. art. 875.1, Mr. White was entitled to a hearing prior to the imposition of the fines. There is no evidence in the record that he or

the trial court waived the determination of financial hardship.  Because the hearing was not held, we vacate Mr. White's fines and remand to the trial court for the required hearing.  *See State v. Adams*, 55,696 (La. App. 2 Cir. 5/22/24), 387 So. 3d 914.

Second, a review of the sentencing transcript reveals that the trial court did not order that Mr. White's sentences be served without the benefit of probation, parole, or suspension of sentence.  La. R.S. 14:27 and La. R.S. 14:95.1 statutorily mandate that the sentence be served without benefits, and the trial court's failure to declare that those sentences be served without benefits is harmless and self-correcting.

## CONCLUSION

For the foregoing reasons, we affirm Gerald White's convictions.  Mr. White's sentences are affirmed in part, as to his 7- and 14-years' imprisonment at hard labor, and vacated in part, as to the imposition of fines. We remand this case for a hearing pursuant to La. C. Cr. P. art. 875.1 to determine Mr. White's ability to pay any assessed fines.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART AND VACATED IN PART; REMANDED WITH INSTRUCTIONS.**