924 So.2d 345 (2006)
STATE of Louisiana
v.
Joseph PAUL, IV.
No. 05-KA-612.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 2006.
*347 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Laura Schneidau, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Maurice L. Tyler, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and MARION F. EDWARDS.
THOMAS F. DALEY, Judge.
The defendant has appealed his conviction of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. For the reasons that follow, we affirm.

FACTS:
At trial, the defendant's probation officer, Steven Becnel, testified that on January 22, 2004, the defendant told him that he was moving from his grandmother's house to his father's home at 6553 Rue Louis Phillipe. On January 30, 2004, Officer Becnel visited with the defendant at the residence. The defendant showed Officer Becnel around the house and pointed out his bedroom.
On February 5, 2004, Officer Becnel and Probation Officer Richard Berger, went to the Rue Louis Phillipe residence because Officer Becnel learned that defendant had some Jefferson Parish traffic attachments and a probation violation. Officer Becnel said that he went to the house to arrest the defendant and also to look for a weapon that "was supposed to be at the house." The defendant was not home, but the defendant's father, Joseph Paul, III (hereinafter referred to as Paul III), let the officers inside. Officer Becnel went into the bedroom that the defendant had identified as his on the January visit. He saw a gun barrel protruding from between two pillows on the side of the defendant's bed. Personal documents were also found in the room, including a checkbook, a framed certificate, and a paycheck stub all bearing the defendant's name.
When Officer Becnel questioned Paul III about the gun, he denied that the gun was his. Further, he did not give any explanation about the gun, and said that *348 he was not even aware the gun was in his son's bedroom.[1]
Deputy Gary Barteet, of the Westwego Police Department testified that he responded to a call for assistance from the probation officers after the gun was found. Deputy Barteet explained that he was called to assist in the collection of evidence and to write the police report. Deputy Barteet testified that he also asked Paul III if the room belonged to the defendant, and he responded affirmatively. When Deputy Barteet asked him about the gun, he denied that the weapon belonged to him.
The defense presented evidence in an attempt to prove that the defendant lived elsewhere and that the gun belonged to Paul III. Defendant's girlfriend, Rocquil Price, testified that she and defendant resided at 1409 Silver Lily Lane with her grandparents and her child, of whom defendant was the father. According to Price, the defendant moved into the residence in August of 2003, when the child was born, and the defendant stayed with her every night at the house on Silver Lily Lane until he was arrested in May. According to Price, the defendant did not keep anything at his father's house.
Paul III testified that he allowed the police to search the house after he told the police that his son was not at home. He acknowledged that he identified the bedroom where the gun was found to be the bedroom where his son slept. However, he said that his son only stayed there two to three times a week and was really staying at his grandmother's house. Paul III said that the police asked him where the gun was located, and he told them he did not know anything about a gun. He also testified that his son had never been in possession of the gun. Rather, Paul III said that a friend, Carl Jackson, had loaned the gun to him after his house was burglarized in September of 2003.[2] According to Paul III, the perpetrator entered the house through his son's bedroom window and then entered Paul III's bedroom. According to Paul III, he began sleeping in his son's bedroom with the gun when his son was not home in case the perpetrator returned. He said he was sleeping in his son's room the night before the police came to the home on February 4, 2004 and that he had not seen his son in a couple of days. The police report of the burglary was introduced into evidence as Defense Exhibit 1.
When asked if he ever claimed possession of the gun on February 4, 2004, Paul III said he told one of the officers that the gun "could" be his. The officer told Paul III to let him know if the gun was his, but Paul III said he told the officer he was not "talking." Paul III explained that he did not claim the gun because he had been arrested in November of 2003 on an attachment and was on probation at his job. He claimed that he was afraid he would lose his job if he were to get into trouble. Paul III admitted that, even after his son's arrest, he never told Officer Becnel that the gun belonged to him not his son. Rather, he said that he told this information to his son's lawyer and signed an affidavit to that effect.
*349 At the conclusion of trial, the jury returned a verdict of guilty to charges of possession of a firearm by a convicted felon. The defendant was sentenced to 12½ years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.

ASSIGNMENT OF ERROR NUMBER ONE
In his first Assignment of Error, the defendant claims the guilty verdict constituted a violation of his federal and state due process rights since the State failed to prove beyond a reasonable doubt that he violated La. R.S. 14:95.1 and the State failed to exclude every reasonable hypothesis of innocence. The defendant contends that the evidence, even when viewed in the light most favorable to the State, failed to prove he had knowledge of the gun in his father's house and failed to exclude the reasonable hypotheses of innocence that his father was in possession of the gun. The State responds that the evidence was sufficient to support the conviction.
In reviewing the sufficiency of evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001). Under LSA-R.S. 15:438, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, this requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57, 63. In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard. Id.
To convict a defendant of violating LSA-R.S. 14:95.1, the State must prove that the defendant was in possession of a firearm and is a convicted felon. State v. Johnson, 03-1228 (La.4/14/04), 870 So.2d 995, 998. Further, the State must prove that ten years has not elapsed since the date of completion of the punishment for the prior felony conviction. State v. Crawford, 03-1494 (La.App. 5 Cir. 4/27/04), 873 So.2d 768, 784. General intent is required to commit this crime. Id.
The facts of each case determine whether the proof is sufficient to establish possession. State v. Johnson, supra at 998. Guilty knowledge of a defendant's intent to possess a firearm may be inferred from the circumstances and proved by direct or circumstantial evidence. Id. Constructive possession of a firearm exists when a firearm is subject to a person's dominion and control. Id. Even if the person's dominion over the weapon is only temporary in nature and if control is shared, constructive possession exists. Id. However, mere presence in an area where *350 a firearm is discovered does not necessarily establish possession. Id. at 999; State v. Curtis, 99-45 (La.App. 5 Cir. 7/27/99), 739 So.2d 931, 944.
At trial, the defendant stipulated to having two prior felony convictions for possession of cocaine as alleged in the Bill of Information.[3] The defendant does not challenge his prior felony convictions or argue the ten-year statutory limitation period has not expired. Instead, the defendant contends that the State failed to prove he had the general intent to possess the gun and to exclude the reasonable hypothesis of innocence that the defendant's father or someone else possessed the gun.
In State v. Jackson, 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37, this Court held that the evidence was sufficient to prove defendant knowingly possessed the gun found in his bedroom under the mattress where he regularly slept. Despite the argument that other friends and relatives had recently stayed in defendant's bedroom while visiting and the gun could have belonged to them, this Court found the evidence was sufficient to affirm defendant's conviction for possession of a firearm by a convicted felon. See also, State v. Johnson, 98-604, 98-605 (La.App. 5 Cir. 1/26/99), 728 So.2d 901, writ denied, 99-0624 (La.6/25/99), 745 So.2d 1187, where this Court found that the evidence presented was sufficient to prove constructive possession of a gun found lying between the mattress and box spring of the defendant's bed.
In the present case, the State presented testimony that established that the gun was found in between pillows in a room the defendant had identified as his bedroom. Even the defendant's father admitted that the defendant slept in that bedroom when spending the night there. In addition, the police recovered personal items bearing the defendant's name from the room. Therefore, the State presented sufficient evidence that, if believed by the jury, established that the defendant would have known that the gun was in between the pillows in the room where he slept, and thus, that the gun was in the defendant's dominion and control.
Whether a defendant possessed the requisite intent in a criminal case is for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311. It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to reweigh the evidence. State v. Carter, 98-24 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444. The trier of fact evaluates the credibility of witnesses, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Crawford, 873 So.2d 768. In returning the guilty verdict in the case at bar, the jury obviously found the State's witnesses more credible than the defendant's witnesses. Accordingly, we find the State sufficiently proved beyond a reasonable doubt that the defendant knowingly possessed the gun seized by police.

ASSIGNMENT OF ERROR NUMBER TWO
In his second Assignment of Error, the defendant claims that the trial court erred in not granting a mistrial when a State witness mentioned inadmissible and unduly prejudicial hearsay evidence in *351 violation of the trial court's pre-trial ruling and in violation of appellant's right to confront his accusers and his right to a fair trial. According to the defendant, a mistrial was warranted because Officer Becnel referred to inadmissible hearsay when he said that the officers went to the residence to look for a "weapon that was supposedly at the house." Defendant claims that this reference was not harmless because it bolstered the State's effort of proving that defendant knew the gun was at his father's house. The State responds that the trial judge properly denied the mistrial motion because the statement was not hearsay and because the remark was not unduly prejudicial.
Prior to the start of trial, the defendant made an oral Motion in Limine to preclude the State from eliciting any testimony that the police had received a call from a woman who reported that the defendant had beaten her and that he was in possession of a firearm because this woman was not going to testify at trial. The State responded that it had tried to get the witness to testify, but that she would not appear. The prosecutor further stated that she did not intend to elicit such testimony from Officer Becnel, and that the State intended to have Officer Becnel testify that he went to the defendant's father's residence because of probation violations and outstanding traffic attachments. The prosecutor also stated that she had instructed her witnesses to refrain testifying about what the woman said because the woman would not testify at trial. After further discussion about the specifics of the information to be excluded, the defendant said he wanted the trial judge to exclude the information regarding "an alleged beating." The trial judge granted the defendant's motion with no objection from the State.
On direct examination, the prosecutor asked Officer Becnel what his intent was when he returned to the defendant's father's residence on February 5, 2004. In response, Officer Becnel answered:
A. I went with a couple other agents as well as some deputies from the Sheriff's Office. Since he had attachments out for him, we are going to arrest him; and I was also going to look for a weapon that was supposedly at the house.
The defendant objected and moved for a mistrial on the basis that the officer had testified about the weapon despite being instructed not to do so. The defendant also asked the judge to admonish the jury to disregard the remark. The trial judge responded that he had instructed the witness not to refer to anything that another person had said regarding the battery and the report of seeing a weapon, but disagreed that Officer Becnel had deliberately intended to testify in contravention of the court's ruling on the Motion in Limine.[4] The judge denied the Motion for a Mistrial and offered to admonish the jury to disregard the remark. The judge agreed to instruct Officer Becnel and the other witnesses to refrain from referring to a report of the weapon and that if the reference was repeated, he would grant a mistrial. The record does not reflect that the judge admonished the jury, and the *352 defendant did not object to the lack of an admonition or to the remedy proposed by the judge. Officer Becnel's remark was not within the scope of LSA-C.Cr.P. art. 770, providing for a mandatory mistrial[5], therefore, LSA-C.Cr.P. art. 771 is applicable. This statute provides as follows:
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial ... when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Ballay, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 126, writ denied, 00-0908 (La.4/20/01), 790 So.2d 13. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a Motion for Mistrial will not be disturbed on appeal absent an abuse of that discretion. Id.
The defendant contends Officer Becnel's remark constituted impermissible hearsay, while the State contends the remark referred to background information forming the basis of the investigation. Hearsay is defined as an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. arts. 801 A(1) and 801 C. Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802; State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1078, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055.
Under certain circumstances, the testimony of a police officer may include information provided by another individual without constituting hearsay if it is offered to explain the police investigation and the steps leading to the defendant's arrest. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 477. However, the fact that an officer acted on information obtained from an informant may be relevant to explain his conduct, but that information cannot be used as a passkey to bring before the jury the substance of the out-of-court *353 assertion that would otherwise be barred by the hearsay rule. State v. Hawkins, 688 So.2d at 477-478; State v. Wille, 559 So.2d 1321, 1331 (La.1990).
In State v. Hawkins, supra, the Louisiana Supreme Court held that an officer's testimony that he had received information from "another anonymous call that stated there were several individuals in the car with the perpetrator, Mr. Hawkins" contained impermissible hearsay as well as non-hearsay information. Id. at 477-478. The Hawkins court found that the first part of the statement was permissible because it explained the steps taken during the investigation. While the Supreme Court found that the part of the officer's statement identifying the defendant as the perpetrator was inadmissible hearsay, it concluded that the error was harmless.
In State v. Fisher, 03-326 (La.App. 5 Cir. 7/29/03), 852 So.2d 1075, this Court held that the trial court did not err in denying the defendant's mistrial motion. In that case, the defendant moved for a mistrial after a police officer's testimony that he "radioed to the other detectives to go ahead and take him [defendant] down, because it wasthrough my investigation I learned that he carried weapons" Id. at 1082. The trial judge denied the mistrial, but admonished the jury. The Fisher court noted that the officer's comment appeared to explain the officer's actions and was not to another crime committed by the defendant, since the officer did not indicate that the defendant had carried weapons illegally. Further, the court noted that the reference was an isolated one and was not part of a pattern of unresponsive answers. Id. at 1083.
In the present case, Officer Becnel's remark could be taken as a permissible explanation of his steps during the investigation, as in Hawkins and Fisher. Alternatively, it could be argued that the remark was not required to explain the officer's actions of going to the defendant's father's house, considering that he had already stated that the defendant had outstanding attachments. However, viewed in either light, we find that the remark was not so prejudicial that a mistrial was warranted. Officer Becnel did not state that the weapon he was looking for was a gun, nor did his statement connect the defendant with the weapon. Considering that this was an isolated and vague reference to a weapon that was supposedly at the house, we find that this comment did not deprive the defendant of his right to a fair trial. As such, we find no abuse of the trial court's discretion in denying the defendant's mistrial motion.

ASSIGNMENT OF ERROR NUMBER THREE
In his third Assignment of Error, the defendant contends the trial court committed reversible error in improperly instructing the jury on the law concerning constructive possession, in failing to instruct the jury on the law concerning circumstantial evidence and in failing to charge the jury as mandated by La.C.Cr.P. art. 804[6]. *354 The defendant also contends that the judge failed to properly instruct the jury on reasonable doubt and failed to give any instruction on circumstantial evidence. The State responds that the defendant failed to object to the judge's instructions and, therefore, is precluded from challenging on appeal the instructions given to the jury.
The State is correct that the record does not reflect that the defendant objected to the jury charges. Under LSA-C.Cr.P. art. 801(C), a party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. This Court has held that a defendant is required to make a timely objection under LSA-C.Cr.P. art. 801 in order to preserve a jury charge issue for review. See State v. Gardner, 05-62 (La.App. 5 Cir. 6/28/05), 907 So.2d 793, citing cases, where this Court found the defendants were precluded from raising issues pertaining to jury charges on appeal when the defendants failed to object to the charges given or the trial court's failure to give a specific charge.
However, an exception to the above rule is when the error is in the definition of the crime and where the error bears full and sufficient proof of the error without the necessity for further hearing. State v. Hollins, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 682, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587. The Louisiana Supreme Court reversed a defendant's conviction in State v. Williamson, 389 So.2d 1328 (La.1980), despite the lack of objection to the jury charges, because the jury was improperly charged with the wrong definition of the charged crime.[7] In Williamson, the Court found that it is within the province of the reviewing court to entertain complaints of constitutional violations, notwithstanding that consideration of such complaint, more often than not, is deferred until the filing of a writ of habeas corpus, whether they are objected to at trial or raised on appeal. Williamson, 389 So.2d at 1331; State v. Armant, 97-1256 (La.App. 5 Cir. 5/27/98), 719 So.2d 510, 516, writs denied, 98-1884 (La. 11/20/98), 729 So.2d 3; 98-1909 (La.11/20/98), 729 So.2d 4; 01-1042 (La.1/4/02), 805 So.2d 1184. When the asserted error involves the very definition of a crime, it is of such importance and significance as to violate fundamental requirements of due process. Id.
In State v. Armant, this Court also stated:
In State v. Thomas, 427 So.2d 428 (La.1982), the Louisiana Supreme Court noted that Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction raised for the first time on appeal. The Thomas court further stated that "This court has not created or recognized a plain error rule of general application." Id. at 435.
In State v. Hollins, supra, this Court noted that the defendant failed to object to an alleged erroneous jury instruction, but reviewed the instruction under the Williamson exception. While the Hollins court found that the trial judge's instructions *355 were in error regarding the requisite intent, the court nevertheless found that the jury charges as a whole correctly stated the applicable law. Hollins pointed out that it had already concluded in a previous assignment that there was sufficient evidence to support the jury's verdict. Id. at 683. Accord, State v. Issac, 527 So.2d 1045 (La.App. 5 Cir.), writ denied, 532 So.2d 175 (La.1988). See also State v. Gardner, supra, where this Court noted the issue was not preserved for review in the absence of an objection, but concluded any error was harmless because the evidence was constitutionally sufficient to support the conviction.
Clearly, the defendant in this case did not properly preserve this issue for appeal. However, we will review the issue related to constructive possession pursuant to the Williamson exception.
The judge charged the jury as follows on constructive possession:
Possession of a firearm may be established by showing that the defendant exercised either actual or constructive possession of the firearm.
A person not in physical possession of a firearm may have constructive possession when the firearm is under that person's dominion or control, even if such constructive possession is temporary and even if the control is shared.
Factors for you to consider in determining whether a defendant exercised domain [sic] and control sufficient to constitute constructive possession include the defendant's knowledge that the firearm was in the area, his relations with the person found to be in actual possession and the defendant's access to the area where the firearm was found.
The mere presence of the defendant in the area where a firearm is found is insufficient to the [sic] constitute constructive possession; however, close proximity to the area where the firearm is found or association with the actual possessor may establish a prima facie case of possession when colored by other evidence.
According to the defendant, the trial judge's instruction on constructive possession was incomplete and inaccurate because the court failed to tell the jury that the State must prove that the defendant had knowledge of the firearm's presence and the general intent to possess the firearm. Although this instruction did not mention that the State had to prove knowledge, the trial judge had already instructed the jury that general intent was required to commit the crime and already charged the jury as to the definition of general criminal intent when reading the elements necessary to convict the defendant of the charged offense. Accordingly, we find that the instruction was correct.
Furthermore, even if we were to find the jury charge was incorrect, an erroneous jury instruction regarding the definition of the crime is subject to the harmless error review. See State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, 98. In determining harmless error, the proper analysis is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to the error." Jynes, 652 So.2d at 98 (citation omitted).
In this case, the guilty verdict actually rendered was "surely unattributable to the error." As was discussed previously, the evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of being a convicted felon in possession of a firearm.
*356 The defendant contends that the trial court erred in refusing to give the following special jury instruction:
The mere presence of the defendant in the area where a controlled dangerous substance is found, or mere association with a person in possession of the substance, is insufficient to constitute constructive possession.
LSA-C.Cr.P. art. 807, which governs special jury charges, states:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Although the record indicates that the defendant submitted the requested jury instruction before trial, the record does not reflect the manner in which the issue was resolved. The trial judge indicated that the matter would be addressed later in a charge conference, but the record does not contain a transcription of the conference. As pointed out by the State, the posture of the record indicates defendant either failed to obtain a ruling on the issue or that he consented to the instructions ultimately given to the jury. As such, the record is not adequate to review this issue.
Of note, this Court held in State v. Davis, 00-278 (La.App. 5 Cir. 8/29/00), 768 So.2d 201, 211, writ denied, 00-2730 (La.8/31/01), 795 So.2d 1205, that the language of the general jury charge on possession sufficiently covered the meaning of a requested special jury charge on mere presence, which was very similar to the requested jury instruction in the present case.[8]
The defendant also contends that the trial judge erred by failing to give an instruction on circumstantial evidence. The record contains the written charges, which were not transcribed. The written charges do not contain a jury instruction on circumstantial evidence. The defendant also complains that the trial judge failed to charge the jury as required by LSA-C.Cr.P. art. 804, which provides in pertinent part:
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case ...
The written instructions contain the following instruction:
It is the duty of the jury in considering the evidence to apply the law as given by the court to that evidence, and it is your duty, if not convinced of the guilt of the defendant beyond a reasonable doubt, to find him not guilty.
As discussed above, the record does not contain any objections from the defendant on the jury instructions and this omission does not meet the Williamson exception. In State v. Robertson, 97-0177 (La.3/4/98), 712 So.2d 8, 33, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998), a capital case where the defendant claimed *357 that the trial court erred in not properly charging the jury on circumstantial evidence, the Supreme Court held that this issue was not preserved for review because defendant did not object to the omissions of the charge nor did he request a special charge on circumstantial evidence.[9]See also State v. Wilson, 93-617 (La.App. 5 Cir. 1/25/94), 631 So.2d 1213, 1219, writ denied, 94-0476 (La.11/4/94), 644 So.2d 1046, where this Court found that the defendant was precluded from raising on appeal the issue that the jury was improperly instructed on reasonable doubt because of the lack of a contemporaneous objection at trial. Accordingly, we find that the defendant is barred from raising the issue regarding the omission of the instruction concerning circumstantial evidence on appeal since he failed to make the objection at trial.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note that the defendant's sentence is illegally lenient because the trial court failed to impose the mandatory fine. This issue was not raised by the State in the trial court or on appeal. We decline to correct the illegally lenient sentence. See State v. Turner, 03-325 (La.App. 5 Cir. 6/19/03), 850 So.2d 811, 819, writ denied, 03-2170 (La.1/30/04), 865 So.2d 74.

CONCLUSION:
For the foregoing reasons, the defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] Officer Berger, testified that he saw the gun, but did not have or overhear any conversations with the defendant's father. He said the defendant's father was cooperative and that there was no one else in the house other than the defendant's father when he and Officer Becnel arrived.
[2] It is noted that Officer Becnel testified that the last registered owner of the gun was someone named Clarence Brown.
[3] Additionally, the State introduced certified copies of documents showing that defendant pled guilty to possession of cocaine in 2000 and again in 2001.
[4] It should be noted that at the close of the defense's case, the defendant actually introduced the police report that contained this statement as D-3. Apparently, the defendant introduced the report without realizing that it contained the reference to the woman's report of the alleged battery and weapon. When the prosecution pointed this out, the defendant urged the court to admit the report, but not to allow it to be published to the jury. The trial judge ultimately told the defendant that he would not allow the jury to see the report unless the defendant raised information in the report during closing argument.
[5] Article 770 provides for a mandatory mistrial upon motion of the when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument and refers directly or indirectly to (1) race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; (2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; (3) the failure of the defendant to testify in his own defense; or (4) the refusal of the judge to direct a verdict.
[6] It is noted that the jury instructions were not transcribed. However, the record contains the court's typed jury charge and there is no assertion by either party that these were not the charges read to the jury. In State v. Nix, 327 So.2d 301, 352 (La.1975), the supreme court found there was no need to transcribe the court's charge where the trial court's written charges were included in the record and where the trial judge in a per curiam, indicated that he read the written charges that he had prepared to the jury. Although the trial judge in this case has not furnished a per curiam, the trial judge could still furnish per curiam comments even though this matter is on appeal. See LSA-C.Cr.P. art. 915(5). Considering that neither the State nor the defendant has complained about the accuracy of the trial judge's written charge, we conclude a per curiam from the trial judge is unnecessary.
[7] Specifically, the trial court in Williamson instructed the jury on the pre-amended law pertaining to first-degree murder rather than the applicable amended law. In effect, the jury was given the wrong instruction on the elements of the crime and was improperly charged with erroneous responsive verdicts.
[8] There, the defendant requested the following charge: "Mere presence of the defendant, NACARRO DAVIS, in the area where narcotics are found, or the mere fact that the defendant may have known the person in actual possession, is insufficient to prove constructive possession on the part of NACARRO DAVIS." Id. at 211.
[9] Compare, State v. Mizell, 208 La. 66, 22 So.2d 827, (1945).