970 So.2d 1150 (2007)
STATE of Louisiana
v.
Antonio MAHOGANY.
No. 07-KA-360.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
*1151 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
*1152 Panel composed of Judges MARION F. EDWARDS, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
WALTER J. ROTHSCHILD, Judge.
On October 20, 2005, the Jefferson Parish District Attorney filed a bill of information charging defendant, Antonio Mahogany, with unauthorized entry of a place of business, in violation of LSA-R.S. 14:62.4. Defendant pled not guilty on November 7, 2005. On September 6, 2006, after a bench trial, defendant was found guilty as charged. He filed a motion for post-verdict judgment of acquittal and a supplemental motion, which were denied on January 30, 2007. Also on January 30, 2007, the State filed a multiple bill and defendant denied the allegations.[1] The trial court set the multiple bill hearing for a later date. Then, the trial court sentenced defendant on the unauthorized entry of a place of business conviction to two years imprisonment at hard labor. Defendant filed a motion to appeal his conviction and sentence, which was granted.
FACTS
At trial, Edwin Tobin, the store manager of Cash America Pawn Shop in Harvey, testified that he went to the business at about 8:30 a.m. on September 1, 2005, just days after Hurricane Katrina struck the area, and he noticed that the store had been broken into. Because his store had already been looted, he decided to move the remaining jewelry to the Cash America store in Marrero. Mr. Tobin had checked the Marrero store the previous day and noted that it had not been broken into and appeared to be secure.
On his way to the Marrero store, Mr. Tobin observed two Jefferson Parish police officers, Sergeant Lori Arnaud[2] and Deputy Janice Griffin, and he approached them. He explained who he was, showed them his business card, told them he thought the jewelry would be safer at the store that had not been broken into, and asked that they escort him to the Cash America store in Marrero. Sergeant Arnaud and Deputy Griffin followed Mr. Tobin to the store.[3] When they arrived at Cash America, the side wall of the building was destroyed. It appeared that someone had used a vehicle to damage the side of the building, creating an opening in the wall. Mr. Tobin testified that he did not know when the damage occurred, but it was not there the prior day when he observed the building.
As Mr. Tobin opened the door to the Marrero store, he and the officers observed a light inside. At the time, there was no electricity in the area, so no lights should have been on. The light was a headlight of a four-wheeler "which was currently in pawn." Defendant, Antonio Mahogany, was observed inside the building in the area where the light was on. Sergeant Arnaud saw defendant duck down. She advised Mr. Tobin to vacate the property. Then, she went to the side of the building where the hole was located, while Deputy Griffin stayed in the front of the building. When Sergeant Arnaud went to the side of the building, she heard the four-wheeler running. After Sergeant Arnaud gave a couple of verbal commands to exit the building, defendant complied.
Defendant was arrested by Sergeant Arnaud. He was searched, and a Ford key *1153 was found on his person. From her knowledge, Sergeant Arnaud did not believe the key came from the pawn shop. In court, Sergeant Arnaud identified defendant as the person she saw inside the Cash America Pawn Shop. Sergeant Arnaud admitted that she did not know defendant's motivations for being in the store that day. Mr. Tobin testified that defendant did not have permission to be in the Cash America store. After the storm, the business was no longer open to the public.
LeKeva Harris, who shares three children with defendant, testified that they did not evacuate for Hurricane Katrina. Ms. Harris stated that there was some food in the house when the storm came, but the food and drink situation got worse as the days went by. According to Ms. Harris, there was a little food in the house on September 1, 2005. However, she then testified that there was nothing left in the house for the kids to drink or eat on September 1st. She indicated that defendant had a Camaro and a Ford Explorer at the time, but they did not have fuel to get out of town. She stated that defendant left home on the morning of September 1st on her daughter's bike with a gas can to look for gas. Ms. Harris further testified that she left town in defendant's brother's car about a week after defendant was arrested. She admitted that defendant's brother was in the house with them on September 1st, and he had a vehicle with gasoline in it, but "not that much." She then stated that she did not know if defendant's brother had a vehicle with fuel on the day defendant was arrested.
Defendant was called to the stand in his defense. He admitted that he had two prior convictions and testified that he owned a Ford Explorer. According to defendant, his vehicle did not have fuel in it on September 1, 2005. He also testified that the car was not dependable, because it ran hot. He stated that he woke up on September 1, 2005, and told Ms. Harris that a man was ciphering gas and filling gas cans for $10, so she should get the children ready, and they would leave when he got back. He left on their daughter's bike with the gas can and some money and went to where he was told the man with the gas would be, but he was not there. After he could not get gas, he saw the Cash America business and thought he would try to find something to help them get through the rest of the storm. He claimed that his family did not have access to anything and could not get water from shelters because they were not staying there. Defendant testified that after he was arrested, the officers did not give him the opportunity to explain what he was doing in the store. However, he also testified that he explained to the arresting officer that he was looking for anything that would help his family.
Defendant admitted that he was in the pawn shop, but stated that he did not turn the four-wheeler's lights on. He testified that there was nothing in the store that could have helped his family, so he left. At that time, the arresting officer saw him. He claimed that the officers did not see him inside the building. He did not think he would find gas in the pawn shop, but he thought the pawn shop might have a generator that could have helped. When asked what he planned on putting in the generator, he said "whatever was possible" and noted that he might not have been thinking at the time. Defendant explained that the key in his pocket when he was arrested was for a Ford Explorer that was in a junkyard. The owner of the junkyard gave him the authority to take parts off the vehicle and to use the parts for his vehicle. He stated that the officer took the key because it was tagged.
*1154 On rebuttal, Sergeant Arnaud testified that she did not recall defendant explaining to her why he was in the business. She stated that she had no doubt that he was in the building, because she saw him when the front door was opened and then watched him exit the hole in the building. She did not recall seeing a gas can or a bicycle.
At the conclusion of trial, the trial court found defendant guilty as charged, noting there was no reason for him to be in a pawn shop post-Katrina.
DISCUSSION
In his first assignment of error, defendant argues that the trial court erred in failing to grant his motion for post-verdict judgment of acquittal, because the State failed to prove beyond a reasonable doubt that he had criminal intent when he entered the store in the aftermath of Hurricane Katrina. Defendant contends that he entered the pawn shop to look for anything that would help his family because they were desperate for food, water and fuel. As such, defendant argues that the State failed to exclude this reasonable hypothesis of innocence. The State responds that the evidence presented was sufficient to establish that defendant committed the crime of unauthorized entry of a place of business.
"A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." LSA-C.Cr.P. art. 821(B). If the court finds "the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense." LSA-C.Cr.P. art. 821(C) and (E).
Evidence may be either direct or circumstantial. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Id. Ultimately, both direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
LSA-R.S. 14:62.4 provides as follows:
A. Unauthorized entry of a place of business is the intentional entry by a person without authority into any structure or onto any premises, belonging to another, that is completely enclosed by any type of physical barrier that is at least six feet in height and used in whole or in part as a place of business.
B. Whoever commits the crime of unauthorized entry of a place of business shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than six years, or both.
Defendant argues that the trial court should have granted his motion for post-verdict judgment of acquittal, because the State did not prove that he had the requisite criminal intent at the time of the alleged crime. "In the absence of a qualifying statutory provision, the terms `intent' and `intentional' in criminal statutes have reference to general criminal intent." State ex rel. E.D.C., 39,892 (La.App. 2 Cir. 5/11/05), 903 So.2d 571, 575, writ denied, 05-1568 (La.1/27/06), 922 So.2d 544. According to LSA-R.S. 14:10, general intent exists when the circumstances indicate that the offender, in the ordinary course of *1155 human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his acts or from his failure to act.
Considering the testimony and evidence before us, we find no error in the trial court's determination that defendant possessed the requisite general criminal intent when he entered the Cash America business. The evidence reveals that he intentionally entered the store, which served as a pawn shop, without authority. Viewing the evidence in a light most favorable to the state, a reasonable trier of fact could have found defendant guilty as charged. Accordingly, we find that the trial court did not err in denying defendant's motion for post-verdict judgment of acquittal.
In his second assignment of error, defendant argues that the trial court erred in failing to grant a mistrial when the State continually tried to admit evidence of other crimes by making reference to a "stolen" key. Defendant explains that this error was not harmless, because these references could have caused the judge to believe that defendant intended to steal in the pawn shop when no other evidence of criminal intent was presented.
The State responds that a mistrial was not warranted in these instances for the following reasons: (1) the rule regarding mistrials for Prieur[4] violations is applicable only in jury trials and not bench trials; (2) the reference to the key was not a specific reference to a specific crime; and (3) the evidence was admissible as res gestae. Although the State argues that the admission of this evidence was not error, it further contends that any error committed in the admission of prior bad acts would be harmless.
During trial, the State referenced the key in its opening statement and mentioned the key was something "he probably shouldn't have had[.]" Defense objected to this comment and noted the following:
[W]e had essentially an unofficial motion previously on the characterization of this key as being stolen and the State agreed that it had no evidence that it was stolen and would not try to say such at trial and now, all of a sudden, she's doing essentially the same thing by saying he had something in his possession that he probably shouldn't have had in his possession.
I object. I don't want to see any further comments like that in this trial, Judge, or I'll move for a mistrial.
The State withdrew the statement and the court recognized that it was withdrawn.
Later, defendant moved for a mistrial after the State asked Sergeant Arnaud the following question:
Q: The key that I showed you that you had taken from the defendant, is that the only key of that nature that you saw that day?
A: No. They were at every dealership on the ground. Everybody we stopped had keys on them like that. They were stealing them from the dealerships.
Q: Okay. But you don't know 
Thereafter, the State withdrew the question, noting it was aware that this officer could not testify that the key was stolen. The trial court noted that the question and the response were withdrawn, and denied the mistrial motion.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial unless the probative value of the evidence substantially outweighs its unfair prejudicial effect, or it falls under one of the exceptions *1156 to the exclusionary rule. LSA-C.E. arts. 403 and 404(B); State v. Smart, 05-814 (La.App. 5 Cir. 3/14/06), 926 So.2d 637, 647, writ denied, 06-1225 (La.11/17/06), 942 So.2d 533. An impermissible reference to other crimes is subject to a harmless error analysis. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102; State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 785, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Id.
A mistrial is a drastic remedy and, except in instances where a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Paul, 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 352. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Id.
LSA-C.Cr.P. art. 770(2) provides that a mistrial shall be ordered "when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial . . . refers directly or indirectly to . . . [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]" (Emphasis added). LSA-C.Cr.P. art. 771 sets forth the situations in which the trial court must admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury.
The present case involved a bench trial. The Louisiana Supreme Court has recognized that LSA-C.Cr.P. articles 770 and 771 are designed to guard against improprieties in the jury's presence and do not mandate a mistrial in a bench trial when a prohibited question is propounded. State v. Marshall, 359 So.2d 78, 83 (La.1978).
In State v. Anderson, 02-273 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, 521, writ denied, 02-2519 (La.6/27/03), 847 So.2d 1254, this Court stated:
The Fourth Circuit has held that Article 770(2) is applicable only in jury trials, and not in bench trials. State v. Bertram, 511 So.2d 1171, 1172 (La.App. 4 Cir.1987), writ denied, 517 So.2d 810 (La.1988). Citing Bertram, the court in Jenkins v. Baldwin, 00-0802 (La.App. 4 Cir. 8/29/01), 801 So.2d 485, 492, stated that "[t]he admissibility of evidence in a judge trial is different from the requirements of jury trials. . . . A judge, unlike a jury, by virtue of the judge's training and knowledge of the law is fully capable of disregarding any impropriety." Compare State v. Myers, 584 So.2d 242, 253 (La.App. 5 Cir.1991), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992), in which this court found that the Bruton rule "does not apply in a bench trial because it is presumed that the judge is capable of applying the rule of limited admissibility and will consider the proffered statement with respect to the confessor's guilt alone." Based on this jurisprudence, as well as the judge's comments at trial that he would disregard all "other crimes" testimony, we find that the trial court did not err in denying defendant a mistrial based on the admission of other crimes evidence. This assigned error is without merit.
(Footnote omitted).
This Court referenced State v. Anderson in State v. Hebert, 05-1004 (La.App. 5 Cir. 4/25/06), 930 So.2d 1039, 1048. In State v. Hebert, the defendant argued a mistrial should have been granted, regardless of *1157 the fact that the trial was a bench trial, because he was denied a fair trial after the State questioned him about what he said or did not say after his arrest. Id. at 1047. This Court held in Hebert that the trial court was able to disregard any inferences that would have prejudiced the defendant. It additionally found that the record showed the trial was fairly conducted and there was strong proof of the defendant's guilt. As such, this Court found no basis for the granting of a mistrial. Id. at 1048-49.
In the present case, the references to the key, of which defendant complains, did not specifically indicate that defendant had committed other crimes. However, even if the references could be construed as indicating that defendant committed other crimes, this was a bench trial and the trial court was certainly able to disregard these references. Thus, any impermissible reference to other crimes would have been harmless. Considering the other evidence against defendant, the verdict was surely unattributable to the references to the key.
Based on the record before us, we find that defendant received a fair trial and that the trial court did not err in denying defendant's motion for mistrial based on other crimes evidence. Accordingly, this assignment of error is without merit.
ERRORS PATENT
The record was reviewed for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review revealed that there are two discrepancies between the commitment and the transcript. When there is a conflict between the transcript and the commitment, the transcript controls. State v. Lynch, 441 So.2d 732 (La.1983).
First, the commitment reflects that defendant was found guilty on September 6, 2006 after a judge trial "on count 1) 14:62.4 F III BURGLARY/BUSINESS." However, the transcript reflects that he was found guilty of unauthorized entry of a place of business. It is noted that the court originally found defendant guilty as charged of burglary of a business, but corrected it to 14:62.4, unauthorized entry of a business, after being prompted by the State. As such, the commitment should be corrected to reflect the correct crime of which defendant was convicted.
Second, the trial court failed to properly inform defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. Although the commitment reflects that defendant was given a proper post-conviction relief advisal, the transcript reflects the trial court stated defendant had "2 years within which to file an application for post-conviction relief." This Court has held that the failure to advise defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete. State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. Therefore, we remand the case and order the trial court to inform defendant of the proper prescriptive period for filing for post-conviction relief by sending written notice of such to defendant within ten (10) days of the rendition of this opinion, and to file written proof in the record that defendant received the notice. Id.
DECREE
For the reasons set forth above, we affirm defendant's conviction and sentence. We remand the case and order the trial court: 1) to correct the commitment to reflect the correct crime of which defendant was convicted, i.e. unauthorized entry *1158 of a business; and 2) to send defendant written notice of the proper prescriptive period for filing for post-conviction relief.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The multiple bill proceedings are not contained in the record before us and are not at issue in this appeal.
[2] At the time of the incident, Sergeant Arnaud was a deputy.
[3] Kristen Mayberry, another manager, as well as two other people, were with Mr. Tobin at the time.
[4] State v. Prieur, 277 So.2d 126 (La.1973).