SUSAN M. CHEHARDY, Judge.
 

 ¡aOn May 7, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Albert Mickel, with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. On July 8, 2009, defendant was tried and found guilty as charged by a twelve-person jury. On August 7, 2009, the trial court sentenced defendant to imprisonment at hard labor for 15 years without benefit of probation or suspension of sentence, to run concurrently with any other sentences.
 
 Facts
 

 At trial, Detective Ricardo Ramos of the Jefferson Parish Sheriffs Office (“JPSO”) testified that, on April 1, 2009, while investigating several vehicle burglaries, he obtained a search warrant for a residence located at 1127 23rd Street in Harvey. Detective Ramos obtained a search warrant because JPSO suspected that two juveniles who resided at 1127 23rd Street were committing the vehicle burglaries. The search warrant gave JPSO the authority to look for objects stolen in those burglaries, including, among other things, a Dell laptop computer, a hard drive, a mouse, a power cord, and a connector cable. Detective Ramos testified |athat he was aware that at least two other people— the juveniles’ mother (S.J.)
 
 [1]
 
 and Albert
 
 *534
 
 Mickel — lived at the residence, which was in a high crime area.
 

 When the detective and other officers went to the residence to execute the search warrant, S.J. answered the door. She was alone in the residence at that time. Detective Ramos informed S.J. why he was there and presented the search warrant to her. The officers then proceeded to search the five-room residence. In one of the bedrooms, the officers noticed school books with one suspect’s name, a school identification card and prescription bottle with the other suspect’s name, tennis shoes, and clothes. After a more thorough search of that bedroom, the officers found numerous gift cards, cell phone SIMM cards, cell phones, and electronic components. S.J. could not explain how her sons had obtained those items.
 

 Next, the officers searched another bedroom. In a shoe box underneath the bed, the officers found a Cobra .380 semi-automatic handgun. The detective later learned that the gun had been reported as stolen. When the officers questioned S.J., she disavowed any knowledge of the weapon and reported that her boyfriend, Albert Mickel, slept on the side of the bed under which the shoe box was found.
 

 After Detective Ramos completed his investigation, he notified defendant’s probation officer. Defendant was arrested a day or two later and transported to the Jefferson Parish Correctional Center (“JPCC”). Thereafter, the defendant was charged with being a convicted felon in possession of a firearm and found guilty as charged by a twelve-person jury.
 

 In his sole assignment of error, the defendant argues that the evidence was insufficient to show that he constructively possessed the handgun found at the residence or that he had the general criminal intent to possess the weapon. The State responds that the evidence was sufficient to establish that defendant had ^constructive possession of the firearm found underneath the bed in which he customarily slept.
 

 In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.
 
 [2]
 
 In cases involving circumstantial evidence, the trial court must instruct the jury that, “ ‘assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.’ ”
 
 [3]
 

 The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 [4]
 

 In the instant case, defendant was convicted of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. In order to convict a person of
 
 *535
 
 violating La. R.S. 14:95.1, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enumerated felony; 3) the defendant possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense.
 
 [5]
 

 |sAt trial, the parties stipulated to defendant’s prior felony convictions. Here, defendant does not challenge the evidence regarding his prior convictions or the ten-year cleansing period.
 

 On appeal, defendant disputes the sufficiency of the evidence of possession and intent, i.e., guilty knowledge. Constructive possession is sufficient to satisfy the possessory element of La. R.S. 14:95.1.
 
 [6]
 
 The question of whether there is sufficient “possession” to convict is dependent on the facts of each case.
 
 [7]
 
 Constructive possession of a firearm exists when a firearm is subject to a person’s dominion and control.
 
 [8]
 
 Even where a person’s dominion over the weapon is only temporary in nature and control is shared, constructive possession exists.
 
 [9]
 
 However, the mere presence of a defendant in the area of the seized contraband does not, by itself, prove he exercised dominion and control over the item such that it was in his constructive possession.
 
 [10]
 

 To establish possession of a firearm by a convicted felon, proof is required that the offender was aware that a firearm was in his presence, and that he intended to possess the weapon.
 
 [11]
 
 Such guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence.
 
 [12]
 

 Defendant argues that the State presented no evidence that he actually handled the gun and no circumstantial evidence that he constructively possessed it, knew about it, or was in the presence of the area where the gun was discovered. He further argues that no evidence was introduced that established his knowing and intentional possession of the gun. He contends that the evidence provided a | (¡reasonable hypothesis of innocence, in that the gun could have been property stolen and hidden by the juveniles who lived in the house. He contends that he was out of town on April 1, 2009, the date the officers discovered the gun.
 

 At trial, the State presented evidence that showed defendant lived at 1127 23rd Street with S.J., and that the gun was found in a shoe box underneath the bed where defendant regularly slept. Detective Ramos testified that he determined that defendant lived at that residence from information he received from his computer system, a “database he looked into.” He further testified that he was in contact with defendant’s probation officer.
 

 S.J. testified for the defense that she rented the house at 1127 23rd Street in
 
 *536
 
 Harvey, and that her and her three sons’ names were on the lease. She maintained that she did not live at that residence with anyone other than her three sons. She further testified that she and defendant were romantically involved and had been so for approximately 16 years. She asserted that defendant slept at her residence two or three times a week, but did not live there. She explained that defendant was out of town on work-related business from March 31, 2009 until April 2, 2009.
 

 S.J. testified that she knew the gun was inside her shoe box underneath the bed. She claimed she found the gun in her sons’ bedroom along with a BB gun on the weekend before the officers searched her house. She did not confront her sons about the gun because she did not think it was real, and she did not know where her sons got the gun. She said that both guns were underneath her bed when the police came. S.J. asserted that she never saw defendant in possession of any gun. She insisted that she had never owned a gun. Further, she did not tell defendant about the gun. She admitted that defendant was still her fiancé, and that the clothes in the closet belonged to defendant. She was aware that defendant was on parole for prior convictions and, therefore, he could not have any weapons in the house.
 

 ^Additionally, S.J. gave a statement to the detective wherein she admitted that she and defendant shared the bedroom “straight down the hall.” She also admitted in her statement that, when she walked through the door, she slept on the left-hand side of the bed, the side closest to the closet. At trial, S.J. identified the statement she gave to Detective Ramos. She admitted telling the detective in her statement that defendant, her fiancé, stayed with her; however, she explained at trial that the detective did not give her a chance to complete her statement. She testified at trial that she told the detective in her statement that she and defendant shared the master bedroom, and that that was the truth. S.J. denied saying that, once she walked through the door of the bedroom, she slept on the left-hand side. She said she told the detective that she landed on one side of the bed and defendant landed on the other side.
 

 Detective Ramos testified for the State in rebuttal that he did not force or coerce S.J. into giving a statement. He asserted that SJ.’s statement wherein she admitted staying in the rear room with defendant, her fiancé, was accurate and in accord with her previous statement while at the house. He further testified that S.J. told him she was not aware of any guns in the house. Detective Ramos also testified that, when he walked in the door of the master bedroom and stood directly at the foot of the bed, the gun was found on the right-hand side underneath the bed in a shoe box.
 

 Additionally, Detective Ramos testified that the master bedroom contained men’s and women’s clothes and shoes. He stated that there were photographs in the house, and that defendant was in several of them. Lieutenant Jason Hippier testified that the photographs depicted numerous male subjects dressed in gang-type clothing. Also, the detective identified a photograph taken of the area above the mirror in the master bedroom that depicted a poster showing several weapons.
 

 | sAfter considering the evidence, the jury apparently found the testimony of the State’s witnesses to be credible and discredited SJ.’s testimony that defendant did not live at her house, and that he did not know the gun was underneath the bed in the master bedroom. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject,
 
 *537
 
 in whole or in part, the testimony of any witness.
 
 [13]
 
 The credibility of witnesses will not be re-weighed on appeal.
 
 Id.
 
 Based on the record before us, we find that the jury could have reasonably inferred that defendant was living at 1127 23rd Street, and that he knew that there was a gun was in a shoebox underneath the bed in which he slept.
 

 In
 
 State v.
 
 Jackson,
 
 [14]
 
 this Court held that the evidence was sufficient to prove the defendant knowingly possessed the gun found in his bedroom under the mattress where he regularly slept.
 
 [15]
 
 The Jackson court noted that the location of the weapon indicated that defendant had easy access to the weapon.
 
 [16]
 
 Despite the argument that other friends and relatives had stayed in the defendant’s bedroom during a recent visit, and the gun could have belonged to them, the Jackson court found the evidence was sufficient to affirm the defendant’s conviction for possession of a firearm by a convicted felon.
 
 [17]
 
 Likewise, in
 
 State v. Patti,
 

 [18]
 

 this Court found the State proved beyond a reasonable doubt that the defendant knowingly possessed a gun found between the pillows in the room where he slept when he stayed at the residence.
 
 [19]
 

 In the instant case, the State presented evidence that defendant lived at the residence with S.J. at the time of the search. The detective determined that defendant resided at the house after conducting a computer search and speaking |9with defendant’s probation officer. S.J. admitted at trial that she and defendant shared the master bedroom, that he slept there two or three times a week, and that the clothing in the bedroom belonged to him. Further, the State presented evidence that the gun was under defendant’s dominion and control because it was found in a shoebox underneath the bed where he customarily slept.
 
 See, State v. Jackson,
 
 supra;
 
 State v. Paul, supra.
 
 In light of the foregoing, we find that the evidence was sufficient under the Jackson standard to show that defendant had constructive possession of the handgun, and that he intended to possess it.
 

 Finally, pursuant to La.C.Cr.P. art. 920, we have reviewed this record for errors patent. In our review, we found no errors that require corrective action.
 
 [20]
 

 
 *538
 
 Accordingly, we affirm defendant’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 . The initials of the juvenile's mother are used to protect the identity of the juveniles.
 

 
 *534
 
 U.R.C.A. Rule 5-2.
 

 [2]
 

 .
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
 

 [3]
 

 . La. R.S. 15:438.
 

 [4]
 

 .
 
 State v. Mitchell,
 
 99-3342, p. 7 (La. 10/17/00), 772 So.2d 78, 83;
 
 State v. Washington,
 
 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
 

 [5]
 

 .
 
 State v. Watson,
 
 08-214, p. 7 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 784.
 

 [6]
 

 .
 
 State v. Ware,
 
 01-194, pp. 4-5 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 499.
 

 [7]
 

 .
 
 State v. Johnson,
 
 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998.
 

 [8]
 

 .
 
 Id.
 

 [9]
 

 .
 
 Id.
 
 at 999;
 
 State v. Blount,
 
 01-844, p. 4 (La.App. 5 Cir. 12/26/01), 806 So.2d 773, 775.
 

 [10]
 

 .
 
 State v. Johnson,
 
 03-1228 at 6, 870 So.2d at 999.
 

 [11]
 

 .
 
 State v. Lee,
 
 02-0704, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 593,
 
 writ denied,
 
 03-0535 (La. 10/17/03), 855 So.2d 755.
 

 [12]
 

 .
 
 State v. Johnson,
 
 03-1228 at 5, 870 So.2d at 998.
 

 [13]
 

 .
 
 State v. Lathers,
 
 03-941, p. 7 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 886.
 

 [14]
 

 . 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934,
 
 writ denied,
 
 98-1454 (La.10/16/98), 726 So.2d 37.
 

 [15]
 

 .
 
 Id.
 
 at 938.
 

 [16]
 

 .
 
 Id.
 

 [17]
 

 .
 
 Id.
 

 [18]
 

 . 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 349-50.
 

 [19]
 

 .
 
 State v. Paul,
 
 05-612 at 7-8, 924 So.2d at 350.
 

 [20]
 

 . Here, the trial judge imposed an illegally lenient sentence. First, he failed to order the sentence to be served without benefit of parole as required by La. R.S. 14:95.1 B. However, this discrepancy does not require corrective action since the restrictions required by the sentencing statute are self-operative. La. R.S. 15:301.1;
 
 State v. Watson,
 
 08-214, p. 12 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 787. Second, the trial judge failed to impose the mandatory fine as required by La. R.S. 14:95.1 B, which provides for a fine of not less than $1,000.00 nor more than $5,000.00. We will not address that issue in this case because the State did not raise this issue in the trial court or on appeal.
 
 See, State v. Stevenson,
 
 07-690, p. 9 (La.App. 5 Cir. 3/11/08), 982 So.2d 848, 853,
 
 affirmed in part, vacated in part on other grounds,
 
 08-885 (La. 1/16/09), 998 So.2d 692.