STATE OF LOUISIANA

VERSUS

GEORGE CEPRIANO, JR.

NO. 21-KA-262

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-1111, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING


March 30, 2022


**HANS J. LILJEBERG**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and Hans J. Liljeberg


<u>**AFFIRMED; REMANDED WITH INSTRUCTIONS**</u>
    **HJL**
    **FHW**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Darren A. Allemand
     Zachary P. Popovich
     Rebecca Kehoe

COUNSEL FOR DEFENDANT/APPELLANT,
GEORGE CEPRIANO, JR.
     Lieu T. Vo Clark

DEFENDANT/APPELLANT,
GEORGE CEPRIANO, JR.
     In Proper Person

**LILJEBERG, J.**

Defendant appeals his convictions and sentences for simple burglary of an inhabited dwelling and violation of a protective order. For the following reasons, we remand for resentencing on count two and for correction of the Uniform Commitment Order ("UCO"). In all other respects, we affirm.

## PROCEDURAL HISTORY

Defendant, George Cepriano Jr., was charged by bill of information with simple burglary of an inhabited dwelling, pursuant to La. R.S. 14:62.2 (count one), and violation of a protective order having been previously convicted of violating a protective order, pursuant to La. R.S. 14:79(B)(2) (count two).[1] He pleaded not guilty. Prior to trial, defendant filed a motion to quash count two, which the trial court denied after a hearing.

Trial began on November 16, 2020. On November 18, 2020, a twelve-person jury unanimously found defendant guilty as charged on both counts. Defendant filed a motion for new trial, which was denied on January 6, 2021. On that same date, the trial court sentenced defendant to eight years imprisonment at hard labor on count one and two years imprisonment at hard labor on count two, to run concurrently.[2]

The State filed a multiple offender bill of information as to count one, simple burglary of an inhabited dwelling, and on February 8, 2021, defendant stipulated to being a second-felony offender. The trial court then vacated defendant's sentence as to count one and resentenced him to eight years

---

[1]     The State filed a bill of information on February 27, 2018, and an amended bill of information on November 5, 2020. The bill of information, as amended, alleges in count two that on or about January 10, 2018, defendant violated La. R.S. 14:79(B)(2) in that he did violate a protective order issued on December 6, 2017 in case number 776-192H of the 24th Judicial District Court, having previously been convicted of violation of a protective order in case number 10-5930 of the 24th Judicial District Court, and in case number 526883 of the 22nd Judicial District Court, and in case number 13-2872 of the 24th Judicial District Court.
[2]     The trial court also ordered the sentences to run concurrently with case no. 18-1112, in which defendant was convicted of battery of a dating partner in violation of La. R.S. 14:34.9 against the same victim in this case.

21-KA-262                                                    1

imprisonment at hard labor without the benefit of probation or suspension of sentence, to be served concurrently with count two. Defendant filed a motion to reconsider his multiple offender sentence, which was denied. Defendant appeals.

## FACTS

At the beginning of trial, the parties stipulated that: on December 6, 2017, under case number 776-192 H, a protective order was issued in favor of Charlotte Hoppe and against defendant, and it was in effect until June 6, 2018; on December 13, 2017, a protective order was issued in case number 21724513 in favor of Ms. Hoppe and against defendant, and it was in effect until June 1, 2018; defendant was convicted in case number 10-5930 of the 24th Judicial District Court of violating a protective order under La. R.S. 14:79; defendant "was convicted again of violating a protective order with this time with previous convictions under case number 13-2872 H."

On November 9, 2017, Detective Benjamin Blevins and Deputy Robert Martin of the Jefferson Parish Sheriff's Office ("JPSO") were dispatched to 716 Second Avenue in Harvey regarding a domestic disturbance. As they arrived, a white female, later identified as Charlotte Hoppe, flagged them down and was crying and screaming for help. They brought Ms. Hoppe back to her house at 716 Second Avenue and detained defendant who was at the residence. According to Detective Blevins, Ms. Hoppe told them that defendant "pulled her by the hair," and she ran away. Detective Blevins testified that they did not arrest defendant for battery because Ms. Hoppe and defendant were both intoxicated and there were no signs of physical abuse. After Deputy Martin advised him of his rights, defendant provided a written statement in which he indicated that he lived at 642 Bellanger Street. The officers took defendant to his residence and told him not to return to Ms. Hoppe's home. Defendant did not ask to get any belongings from the Second Avenue residence.

Deputy Damian Lafont of the JPSO testified that on November 10, 2017, he responded to a 9-1-1 call regarding a burglary at 716 Second Avenue. When he arrived, Ms. Hoppe informed him that the home belonged to her and that she believed defendant was responsible for the burglary. Ms. Hoppe indicated that she and defendant had been dating, but that he did not have permission to go into her house that day. She also informed Deputy Lafont of the incident the night before, indicating that defendant pulled her hair and pulled her to the ground. Deputy Lafont testified that he walked through the residence and did not notice any signs of forced entry. Ms. Hoppe gave him a list of items that had been removed, including personal items and surveillance cameras.

Deputy Lafont testified that he called defendant and spoke to him on the phone and then went to his home at 642 Bellanger. He described the house as "a lived in residence" where somebody stayed on a consistent basis. Defendant denied going to Ms. Hoppe's house that day. Deputy Lafont testified that he did not have enough evidence to apply for a search warrant, so he did not conduct a search of defendant's house. Deputy Lafont testified that he did not make an arrest, noting that he did not have any video surveillance at that time.

Detective Keith Dowling of the JPSO testified that on November 10, 2017, he was assigned to do a follow-up investigation of a burglary at 716 Second Avenue. He learned that Ms. Hoppe reported that her residence was burglarized that day, that she believed defendant committed the crime, and that some of the items taken included "[f]emale clothing, female toiletries, some remote controls for TV, I believe maybe for a DVR, maybe a cable box, set of video surveillance system cameras," and chargers for a phone and iPad.

Detective Dowling testified that Ms. Hoppe told him about the domestic disturbance involving defendant the night before the burglary, and she provided a video of the aftermath of the burglary. Ms. Hoppe told him defendant was not

"authorized to make entry." Detective Dowling provided that he reviewed surveillance video clips provided to him by Ms. Hoppe, which were taken from a neighbor's house across the street, depicting portions of the domestic disturbance and the burglary. Ms. Hoppe described the events as depicted in the video surveillance. The first video clip, stamped around 11:00 p.m. on November 9, 2017, shows the incident between the parties in Ms. Hoppe's front yard. The second video clip, stamped as November 10, 2017, shows a man exit a house with a bag and leave on a bicycle. Ms. Hoppe identified the man in the video as defendant. Detective Dowling stated that it appeared to him that defendant was carrying two full, white, garbage bags in the video.

Detective Dowling testified that Ms. Hoppe never told him that defendant lived at her house, but she indicated that he stayed there often. Defendant was arrested on December 12, 2017. Detective Dowling obtained a search warrant for defendant's home, and defendant consented to a search of his vehicle. He stated that he did not find any of the items reported missing from Ms. Hoppe's house, but this was the first search of defendant's house and it was over a month after the burglary. Detective Dowling testified that it would be normal for a perpetrator of a burglary to get rid of stolen items within a few days. He testified that the bicycle seen in the video was located at defendant's house. He also found bills in defendant's name and a lease for 642 Bellanger Street signed by defendant on October 17, 2017. The detective identified a picture of defendant at the time of his arrest, in which defendant wore a blue sweatshirt that appeared to be the same sweatshirt in the video after the burglary.

Charlotte Hoppe testified that she is the owner of the residence at 716 Second Avenue in Harvey, where she lives with her daughter. Ms. Hoppe provided that she is a "master teacher" and that in late 2017 and early 2018, she worked at Westbank Community School ("WCS") as the dean of students. She

testified that her work also brought her to the Jefferson Parish School Board building at 501 Manhattan Boulevard ("the school board building"). She stated that she often went there to get help as she learned to be a testing coordinator and for disciplinary issues regarding students.

Ms. Hoppe stated that she started seeing defendant in October of 2016, and during their entire relationship, he rented a house on Bellanger Street, which is a few blocks from her home. She stated that she and defendant would often spend the night together, but defendant never lived at her house or kept personal items there, and he was never given a key to her house. She provided that during their relationship, he always had her permission before he came over and never went to her house without her permission.

Ms. Hoppe testified that on November 9, 2017, she and defendant went to a couple of bars and had "quite a bit to drink." She indicated that they got into an argument because he accused her of sleeping with her boss and being an alcoholic, and he was also unhappy about an upcoming work conference she was planning to attend in Las Vegas. When they arrived at her house, they both got out of his car and walked toward the house, but she did not want to go inside because he was angry and she did not want to be "stuck inside" with him. She turned around and went down her front steps, and defendant followed her. When they got to the grass, he pulled her to the ground by her hair and yelled at her.

Ms. Hoppe stated that a few days after the incident, she located video surveillance from a neighbor that showed part of the incident, and she recorded the video on her phone to give to the police. She viewed the surveillance in court and identified herself and defendant in the video. She stated that the video showed defendant pulling her down by her ponytail and then, once she started screaming, defendant backed away, and she was able to get up and run away. She called the police, and the 9-1-1 call was played for the jury. Ms. Hoppe provided that the

police met her on a side street and brought her back to her house where defendant was waiting. She indicated the police did not arrest him but took him to his home at 642 Bellanger.

Ms. Hoppe testified that the next day, November 10, 2017, she went to the courthouse to file a restraining order against defendant, but it was closed for Veterans' Day. She returned home and was "picking up" around her house when she noticed that six small security cameras that had been on her desk that morning were gone. Ms. Hoppe realized someone had been in her house, and she believed it was defendant when she noticed her remote controls were missing. She stated that she was also missing some clothes, hair extensions, a curling iron, a hair dryer, a flat iron, a Bluetooth speaker, and various other items. Ms. Hoppe then called the police at 11:58 a.m. The 9-1-1 call was played for the jury. Ms. Hoppe acknowledged that she was speculating when she told the 9-1-1 operator that defendant came through a window that he knew did not lock. She thought he likely went through the window because there were no signs of forced entry and he did not have a key. She stated that she did not give defendant permission to go into her house on November 10, 2017.

Ms. Hoppe obtained a protective order on December 6, 2017, in which defendant was ordered to stay away from her, her residence, and her places of employment, including WCS and the school board building. Ms. Hoppe testified that there was a second protective order issued on December 13, 2017, against defendant, and it was in effect until June 1, 2018. The second order also prohibited defendant from going to her residence, school or place of employment. Ms. Hoppe testified that on January 10, 2018, George Hebert informed her that defendant had contacted some of her coworkers and went to the school board building. She felt that defendant was continuing to try to harass her, so she called the police to report the protective order violation.

Mr. George Hebert testified that he is the Director of Support Performance and Professional Accountability for the Jefferson Parish School System. He stated that on January 10, 2018, he met with defendant in a conference room at the school board building for 15-20 minutes, but he had not invited defendant to the building for a meeting. Mr. Hebert spoke with Ms. Hoppe later on January 10, 2018, and learned that she had a restraining order against defendant. Mr. Hebert stated that as far as he knew, defendant did not work or do business with the school board.

Mr. Hebert stated that when he met with defendant on January 10, 2018, defendant alleged that Ms. Hoppe was having an affair with Mr. Robichaux, who was Ms. Hoppe's coworker and the principal at WCS. Mr. Hebert said that defendant also eluded that Ms. Hoppe had a problem with alcohol. He testified that defendant brought a restraining order against Ms. Hoppe and police reports to the meeting, but he did not inform Mr. Hebert that there was a protective order against him that ordered him not to go to the school board building. Defendant sent various "follow up emails" to Mr. Hebert after their meeting.

Defendant testified at trial and acknowledged that he had pleaded guilty to simple battery in 2000, a violation of a protective order in 2011, and a violation of a protective order in 2014. He also admitted that in St. Tammany Parish he previously pleaded guilty to domestic violence battery by strangulation, and he had two convictions for violating a protective order in St. Tammany Parish—one in 2013 and one in 2014.

Defendant testified that he had lived with Ms. Hoppe at the Second Avenue address and had a key to the house, but he also maintained his own residence at 642 Bellanger Street. After work on November 9, 2017, he and Ms. Hoppe decided to go out. Defendant said that they first went to a bar where they ate dinner, played darts, and had a few drinks. They left around 10:00 p.m. and went to another bar. Defendant testified that they stayed for about 45 minutes and then

he drove them home. On the drive home, he told Ms. Hoppe he planned on leaving her because of her drinking issues. He stated that Ms. Hoppe then punched him in the face, spit on him, and began kicking his dashboard.

Defendant stated that after they arrived at the house on Second Avenue, Ms. Hoppe was yelling at him, spit on him in the front yard, and fell down. He indicated that she went down the street and said she was calling the police, so he sat on the porch to wait for them. Defendant denied pushing Ms. Hoppe to the ground, pulling her hair, hitting her, or threatening her. Defendant stated that she did not tell him that he was no longer allowed in her home or ask for her key back. He stated that the police drove him to the Bellanger Street house.

Defendant testified that he rode his bike to the house on Second Avenue the next day, November 10, 2017, because he wanted to retrieve his belongings while Ms. Hoppe was not home. Defendant testified that he did not take anything that did not belong to him and that he was in the house for about 30 minutes. He stated that he put everything in one trash bag and left. He acknowledged that he did not contact Ms. Hoppe to tell her he was going to her house. Defendant stated that the police came to his home the following day, but did not arrest him. Defendant testified that he was familiar with a window that did not lock at Ms. Hoppe's house, but it was only open about six inches and would not go up or down.

Defendant testified that he appeared in court on December 6, 2017, and Ms. Hoppe was granted a protective order against him. At that hearing, Ms. Hoppe discussed the incident on November 9, 2017, and him retrieving his belongings the next day. After he was arrested on December 12, 2017, he was brought to court for another protective order the following day. He indicated that the commissioner physically handed him a protective order, and he signed it.

Defendant stated that on January 3, 2018, he filed for a protective order against Ms. Hoppe, and it was granted that day. Defendant admitted that he went

to the school board building on January 10, 2018, but did not go there to harass Ms. Hoppe. He provided that Ms. Hoppe worked at WCS, but she did not work at the school board building. He indicated that he met with Mr. Hebert and gave him a copy of the protective order he had against Ms. Hoppe and the one she had against him. They discussed the relationship between Ms. Hoppe and Mr. Robichaux. He denied that he intended to get Ms. Hoppe fired; rather, he wanted Ms. Hoppe to get help for her alcohol issues. Defendant acknowledged that he was aware that he could make a complaint with the school board without going there, as he had previously done so.

## LAW AND DISCUSSION

On appeal, defense counsel has filed a brief setting forth two assignments of error. Defendant has filed a *pro se* brief, in which he re-urges the two assignments raised by defense counsel and sets forth two additional assignments of error.

In his second *pro se* assignment of error,[3] defendant argues that the State failed to prove beyond a reasonable doubt that he committed simple burglary of an inhabited dwelling. Defendant argues that he did not make an unauthorized entry into Ms. Hoppe's home on Second Avenue on November 10, 2017, because he lived with her at the home and had a key to the home. He asserts that Ms. Hoppe gave the police false information as to how he entered the home. He notes that the video introduced by the State did not show him enter or exit the home but only showed him leaving with one bag. Defendant further notes that none of Ms. Hoppe's items were found at his residence. Defendant asserts that there was no specific intent to commit a felony or theft inside the residence.

The State responds that it proved all of the elements of simple burglary of an inhabited dwelling beyond a reasonable doubt. It contends that the evidence

---

[3] When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

proved that Ms. Hoppe lived at 716 Second Avenue at the time of the burglary and that defendant did not live with her. The State notes that Ms. Hoppe did not give defendant permission to enter her home on the day in question, and defendant admitted to entering Ms. Hoppe's home that day and was captured on video leaving on his bicycle with a garbage bag. The State asserts that the jury's decision to find Ms. Hoppe credible and to convict defendant was reasonable.

In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, *writ denied*, 10-1357 (La. 1/7/11), 52 So.3d 885.

Evidence may be either direct or circumstantial. *State v. Williams*, 05-59 (La. App. 5 Cir. 5/31/05), 904 So.2d 830, 833. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *Id.*; *State v. Shapiro*, 431 So.2d 372, 378 (La. 1982). When circumstantial evidence forms the basis of a conviction, La. R.S. 15:438 requires that the elements of the offense be proven so that every reasonable hypothesis of innocence is excluded. *State v. Schnyder*, 06-29 (La. App. 5 Cir. 6/28/06), 937 So.2d 396, 400; *State v. Tran*, 97-640 (La. App. 5 Cir. 3/11/98), 709 So.2d 311, 316. All of the evidence, both direct and circumstantial, must be sufficient to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.*

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Miller*, 20-182 (La. App. 5 Cir. 12/23/20), 308 So.3d 1246, 1256, *writ denied*,

21-233 (La. 4/27/21), 314 So.3d 838.  In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297.  It is not the function of the appellate court to assess credibility or re-weigh the evidence.  *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442, 443; *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21), 314 So.3d 914, 944, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321.

Simple burglary of an inhabited dwelling is the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein.  La. R.S. 14:62.2.  In order to convict an accused of simple burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry; (2) the structure was inhabited at the time of entry; and (3) the defendant had the specific intent to commit a felony or theft inside the structure. *State v. Stock*, 16-552 (La. App. 5 Cir. 2/22/17), 212 So.3d 1268, 1275.  In order to satisfy the unauthorized entry element, the State must prove that the defendant did not have permission to enter the premises.  *State v. Micelotti*, 07-808 (La. App. 5 Cir. 4/15/08), 984 So.2d 847, 852, *writ denied*, 08-950 (La. 12/12/08), 997 So.2d 559.

Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused.  *Stock*, 212 So.3d at 1276-77; *State v. Naquin*, 10-474 (La. App. 5 Cir. 2/15/11), 61 So.3d 67, 71.  Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." *Id.*; La. R.S. 14:10(1).

The record shows that the State proved each element of the crime of simple burglary of an inhabited dwelling. Ms. Hoppe testified that she lived in the house at 716 Second Avenue. She stated that defendant did not live with her and was never given a key to her house, but he knew there was a window that did not lock. She provided that during their relationship, defendant never went to her house without her permission. She also testified that some of her personal belongings were missing after defendant went to her house, and the video shows defendant leaving the house with a bag.

Deputy Blevins and Detective Martin both testified that on November 9, 2017, they told defendant not to return to Ms. Hoppe's home and that defendant did not ask to get any belongings from her home. Deputy Lafont testified that he went to defendant's residence at 642 Bellanger, and he described that house as "a lived in residence" where somebody stayed on a consistent basis. Detective Dowling testified that he did not find any of Ms. Hoppe's missing items in defendant's house or car, but it would be normal for the perpetrator of a burglary to get rid of stolen items.

Defendant testified that after the incident on November 9, 2017, Ms. Hoppe did not tell him that he was no longer allowed in her house or ask for his key back. Defendant admitted that he went to the house on November 10, 2017, but he stated that he did not take anything that did not belong to him.

After listening to the testimony and considering all of the evidence, the jury apparently found Ms. Hoppe's testimony to be more credible than defendant's. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant committed simple burglary of an inhabited dwelling. Accordingly, this assignment of error is without merit.

12

In defendant's first counseled assignment of error and first *pro se* assignment of error, he argues that the trial court erred by denying his motion to quash count two of the bill of information, which charged him with violating a protective order that prohibited him from going to the school board building. He asserts that the school board building is a public place where Ms. Hoppe was not assigned to work, and that he went there when Ms. Hoppe was not present. He also asserts that the protective order was an impermissible restriction on his First Amendment right to assemble in a public place and express non-threatening opinions. Defendant asserts that as a resident and taxpayer of Jefferson Parish, he had the right to make inquiries and comments at a public building regarding a public school teacher.

The State asserts that defendant's constitutional challenge to his prosecution for count two should be deemed waived, because if defendant believed the protective order violated his constitutional rights, he had a remedy of seeking to modify the protective order. Instead, he chose to willfully violate it. The State asserts that a person is free to violate an unconstitutional statute restricting free speech, but one is not at liberty to break the same words when written as a court injunction, citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) and *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

Alternatively, the State contends that if the claim is properly before this Court, it lacks merit because defendant's speech was not protected by the First Amendment. The State asserts that defendant's complaints about Ms. Hoppe were false and unsubstantiated. The State further asserts that defendant's act of physically going to the school board building was not protected by the First Amendment, noting that defendant could have contacted the school board by phone, mail, or other actions that would not have violated the protective order.

A motion to quash is, essentially, a mechanism to urge pretrial pleas, i.e. pleas which do not go to the merits of the charge. *State v. Lauff*, 06-717 (La. App. 5 Cir. 2/13/07), 953 So.2d 813, 818. A court considering a motion to quash must accept as true the facts contained in the bill of information and determine as a matter of law from the face of the pleadings whether a crime has been charged. *Id.*; *State v. Billard*, 03-319 (La. App. 5 Cir. 7/29/03), 852 So.2d 1069, 1074, *writ denied*, 03-2437 (La. 2/6/04), 865 So.2d 739. Generally, the trial judge's denial of a motion to quash should not be reversed in the absence of a clear abuse of the trial court's discretion. *State v. Lommasson*, 11-536 (La. App. 5 Cir. 11/29/11), 81 So.3d 796, 799.

The Domestic Abuse Assistance Act, La. R.S. 46:2131, *et seq.*, provides protection in the form of temporary restraining orders and protective orders for persons subject to domestic abuse. *S.M. v. T.M.*, 19-369 (La. App. 5 Cir. 12/26/19), 289 So.3d 141, 143. This Act provides that a protective order may be granted "[d]irecting the defendant to refrain from abusing, harassing, or interfering with the person or employment or going near the residence or place of employment of the petitioner." *See* La. R.S. 46:2136(A)(1) and La. R.S. 46:2135(A)(1). The protective order dated December 6, 2017, was issued pursuant to the Domestic Abuse Assistance Act, and it provided that defendant was to stay away from Ms. Hoppe, her residence and her places of employment, including WCS and the school board building, and "not to interfere in any manner with such employment." A trial court is afforded discretion in the issuance of a protective order, and the trial court's order is reversible only upon a showing of an abuse of discretion. *Id.*

La. R.S. 46:2136(D) provides that "[o]n the motion of any party, the court, after notice to the other parties and a hearing, may modify a prior order to exclude any item included in the prior order, or to include any item that could have been included in the prior order." In the present case, the record does not reflect that

defendant sought to modify the terms or conditions of the protective order. Rather, defendant violated the terms of the protective order and then sought to quash count two of the bill of information after being charged with violating the protective order. The trial court denied defendant's motion to quash, which pertained to quashing the bill of information, not the protective order.

Defendant cites *Lassalle v. Daniels*, 96-176 (La. App. 1 Cir. 5/10/96), 673 So.2d 704, *writ denied*, 96-1463 (La. 9/20/96), 679 So.2d 435, *cert. denied*, 519 U.S. 1117, 117 S.Ct. 963, 136 L.Ed.2d 848 (1997), in support of his position that the protective order against him was overbroad and violated the First Amendment. In *Lassalle*, the defendant sought review of a preliminary injunction prohibiting him from threatening or harassing Judge Lassalle and, specifically, from going to the ninth floor of the courthouse where her office was located, without prior court approval. The defendant argued that the injunction wrongfully infringed on his constitutional rights, particularly his First Amendment right to free speech. *Id.* at 706. On appeal, the First Circuit noted that the defendant's speech was delivered with the specific intent to injure and was focused and directed at one particular individual, which is a type of speech that is not constitutionally protected. *Lassalle*, 673 So.2d at 709. However, the court found that the ninth floor of the courthouse was a public area and that the injunction impermissibly enjoined Daniels from going on the ninth floor. As such, the court amended the preliminary injunction to allow the defendant access to the ninth floor of the courthouse, as long as such access did not violate the prohibition against threats and harassment. *Id.* at 710.

Even if we were to agree with the *Lassalle* decision on the merits, we find it is distinguishable from the present case. In *Lassalle*, the defendant appealed the issuance of the preliminary injunction itself, whereas defendant in this case did not

challenge the terms and conditions of the protective order until after he was charged with violating it.

After review, we find that defendant waived his right to challenge the terms and conditions of the December 6, 2017 protective order by failing to seek modification of the protective order. Nevertheless, even if defendant had not waived his right to challenge the protective order, we find no merit in his argument that the protective order violated his constitutional rights.

The December 6, 2017 protective order prohibited defendant from going to Ms. Hoppe's places of employment, specifically WCS and the school board building, and from interfering "in any manner with such employment." Although defendant contends that Ms. Hoppe did not work at the school board building, Ms. Hoppe testified that her work brought her to this building for many different events. Defendant did not establish that the protective order was unduly restrictive or that he had a purpose for going to the building other than to harass Ms. Hoppe or interfere with her employment. While defendant contends that, as a citizen of Jefferson Parish, he had the right to go to the school building to complain about Ms. Hoppe, we note that there were alternate ways for defendant to set forth any valid claims, other than going to the building itself.

Based on the foregoing, we find that the trial court did not abuse its discretion in denying defendant's motion to quash count two. Accordingly, this assignment of error is without merit.

In his second counseled assignment of error and third *pro se* assignment of error, defendant asserts that his multiple offender sentence of eight years imprisonment for simple burglary of an inhabited dwelling is constitutionally excessive. He notes that as a second-felony offender, the sentencing range was four to 24 years. He argues that the trial court should have considered that defendant only entered Ms. Hoppe's house in order to retrieve his own belongings

and that the personal items that Ms. Hoppe alleged were taken were never found on his property. Defendant asserts that an eight-year sentence is a needless imposition of pain and suffering and is constitutionally excessive.

The State argues that defendant's enhanced sentence is not excessive. It provides that defendant's criminal history includes a conviction for simple battery, four separate convictions for violating protective orders, and a conviction for domestic abuse battery by strangulation. The State avers that defendant's criminal history and instant crimes show an extreme lack of respect for women and an extreme pattern of abusing his romantic partners. The State argues that while defendant testified to an innocent explanation, the jury found Ms. Hoppe more credible.

At the sentencing hearing on January 6, 2021, a victim impact statement from Ms. Hoppe was provided, in which she explained that she has suffered emotional, physical, and financial trauma every day due to defendant's actions. Defendant's sister provided an oral statement, explaining that defendant was "very much needed and loved by his family" and asking the court for leniency.

The penalty for simple burglary of an inhabited dwelling (count one) is imprisonment at hard labor for not less than one year nor more than twelve years. La. R.S. 14:62.2. Defendant was originally sentenced to eight years imprisonment at hard labor on count one. As a second-felony offender, pursuant to La. R.S. 15:529.1(A)(1), defendant faced a sentencing range of four to 24 years imprisonment at hard labor without the benefit of probation or suspension of sentence. After defendant stipulated to being a second-felony offender, the trial court vacated the sentence as to count one and resentenced defendant to eight years imprisonment at hard labor without the benefit of probation or suspension of sentence.

Defendant filed a motion to reconsider sentence under La. C.Cr.P. art. 881.1, asking the court to reconsider his enhanced sentence on the basis that the sentence imposed is excessive and in violation of the Louisiana Constitution and the United States Constitution. Specifically, counsel alleged that "[a] sentence of 8 years as a multiple offender is excessive and a meaningless infliction of pain and suffering." The trial court denied the motion on February 9, 2021.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Calloway*, 19-335 (La. App. 5 Cir. 12/30/19), 286 So.3d 1275, 1279, *writ denied*, 20-266 (La. 7/24/20), 299 So.3d 69; *State v. Nguyen*, 06-969 (La. App. 5 Cir. 4/24/07), 958 So.2d 61, 64, *writ denied*, 07-1161 (La. 12/7/07), 969 So.2d 628. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *State v. Woods*, 18-413 (La. App. 5 Cir. 12/19/18), 262 So.3d 455, 460; *Nguyen*, 958 So.2d at 64.

In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Calloway*, 286 So.3d at 1279. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Soraparu*, 97-1027 (La. 10/13/97), 703 So.2d 608. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Woods*, 262 So.2d at 460; *State v. Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880.

The testimony at trial indicated that on November 10, 2017, defendant entered Ms. Hoppe's home without her permission after they had a domestic dispute the night before. Ms. Hoppe indicated that various items were missing from her home, though defendant denied taking any of Ms. Hoppe's property. Detectives Blevins and Martin testified that the night before the burglary, they told defendant not to return to Ms. Hoppe's home and that defendant did not ask to get belongings from her home. Defendant admitted that he rode his bike to Ms. Hoppe's residence on November 10, 2017, and that he was inside for approximately thirty minutes. In her victim impact statement, Ms. Hoppe noted the fear and trauma she has suffered as a result of defendant's actions.

Defendant's criminal history includes convictions for violation of several different protective orders, simple battery, and domestic violence battery by strangulation. The domestic abuse battery by strangulation from 2014 is the predicate offense used for the enhanced sentence in the instant case. Additionally, defendant was charged in a separate bill of information with battery of a dating partner against Ms. Hoppe regarding the incident the evening before the instant burglary charge.

The maximum sentence defendant could have received was 24 years imprisonment, and he received an eight-year sentence, one-third of the maximum. Considering the facts and circumstances set forth in the record before us, we find that defendant's eight-year sentence as a second-felony offender is not constitutionally excessive. Accordingly, defendant's second counseled and third *pro se* assignments of error are without merit.

In defendant's fourth *pro se* assignment of error, he argues that the evidence against him should have been suppressed due to inaccuracies in the arrest report and probable cause affidavit. Specifically, he claims that Detective Dowling did not recover the surveillance video as stated in the arrest warrant and probable cause

affidavit. Rather, Ms. Hoppe gave him the video. He also argues that the December 10, 2017 video does not show him riding to Ms. Hoppe's home as Detective Dowling stated in his police report.

La. C.Cr.P. art 841(A) states, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Here, the record does not reflect that defendant filed a pleading challenging the arrest report and probable cause affidavit or objected to any such error in the trial court. The record contains a motion to suppress confession, identification, or physical evidence, which does not specifically allege any error in the arrest warrant. It does not appear that there was a hearing or a ruling on the motion to suppress. It is well established that motions pending at the commencement of trial are waived when the defendant proceeds to trial without raising the issue that there was no ruling on the motions. *State v. Lewis*, 11-1000 (La. App. 5 Cir. 5/22/12), 96 So.3d 1211, 1217, *writ denied*, 12-1480 (La. 11/21/12), 102 So.3d 55. Accordingly, we find this issue has not been preserved for appellate review.

**ERRORS PATENT**

The record was reviewed for errors patent, pursuant to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). Two errors requiring corrective action were noted.

First, the sentencing minute entry, uniform commitment order (UCO), and transcript reflect that during sentencing, the trial court did not restrict the benefits of probation, parole, or suspension of sentence as to count two. La. R.S. 14:79(B)(2) provides that on a second or subsequent conviction for violation of protective order, the offender shall be fined not more than $1,000 and imprisoned with or without hard labor for not less than fourteen days nor more than two years. It further states that at least fourteen days of the sentence of imprisonment imposed shall be without benefit of probation, parole, or suspension of sentence.

Generally, when a trial court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1. *State v. Shelby*, 18-186 (La. App. 5 Cir. 12/27/18), 263 So.3d 1223, 1228; *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, 801. However, in this case, the trial court's failure to impose the statutory restrictions is not cured by La. R.S. 15:301.1 because the portion of the sentence to be served without benefits is left to the discretion of the trial court. Therefore, we remand for resentencing on count two, with instructions to the trial court to impose defendant's sentence in accordance with La. R.S. 14:79(B)(2).

Second, the UCO does not reflect that the trial court imposed a fine as to count two. The transcript from sentencing, however, indicates the court ordered defendant to pay a $500 fine. The transcript prevails. *See State v. Lynch*, 441 So.2d 732, 734 (La. 1983). Accordingly, we remand the matter and instruct the trial court to correct the UCO to conform to the transcript and further order the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities following La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department. *See State v. Delaneuville*, 20-130 (La. App. 5 Cir. 11/18/20), 307 So.3d 378, 383.

**DECREE**

For the reasons stated above, we remand the matter with instructions for the trial court to resentence defendant on count two and to correct an error in the UCO. In all other respects, we affirm.

**AFFIRMED; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 30, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-KA-262

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          LIEU T. VO CLARK (APPELLANT)

### MAILED
GEORGE CEPRIANO #18875 (APPELLANT)     HONORABLE PAUL D. CONNICK, JR.
PLAQUEMINE PARISH DETENTION            (APPELLEE)
CENTER                                 DISTRICT ATTORNEY
POST OFFICE BOX 67                      REBECCA KEHOE (APPELLEE)
POINTE À LA HACHE, LA 70082             ZACHARY P. POPOVICH (APPELLEE)
                                       ASSISTANT DISTRICT ATTORNEYS
                                       TWENTY-FOURTH JUDICIAL DISTRICT
                                       200 DERBIGNY STREET
                                       GRETNA, LA 70053